KALAMAZOO LOOSE-LEAF BINDER CO. v. PROUDFIT LOOSE-LEAF CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1917.)

No. 3026.

1. PATENTS ⬥328—INFRINGEMENT—LOOSE-LEAF BINDER.

The Bushong patent, No. 941,757, for a loose-leaf binder, as limited by prior decisions, *held* not infringed by a modified structure of defendant.

2. PATENTS ⬥321—SUITS FOR INFRINGEMENT—PROCEEDINGS AFTER INTERLOCUTORY DECREE—DISCRETIONARY POWERS OF COURT.

After an interlocutory decree in an infringement suit construing the patent, adjudging its validity and infringement and granting an injunction and accounting has been affirmed on appeal, the court has jurisdiction in connection with the accounting and before final decree to consider a modified structure presented by defendant, and may in its discretion adjudge that such structure does not infringe and that such modification of the infringing structures will take them out of the operation of the injunction; and such practice, involving no modification of the decree affirmed, where the matter can be fully determined on the record made without injustice to complainant, is proper and to be commended as shortening the litigation and lessening expense.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in equity by the Kalamazoo Loose-Leaf Binder Company against the Proudfit Loose-Leaf Company and William S. Proudfit, Jr. From an order made on accounting, complainant appeals. Affirmed.

Otis A. Earl, of Kalamazoo, Mich., for appellant.

Cyrus W. Rice, of Grand Rapids, Mich., and James M. Proudfit, of Chicago, Ill., for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

KNAPPEN, Circuit Judge. This appeal grows out of this situation:

In a suit for infringement of three patents to Bushong on loose-leaf binders, the District Court found claims 13, 15, and 16 of patent No. 941,757 valid and infringed, and entered the usual interlocutory decree for injunction and accounting. The decree of the District Court as respects this patent was affirmed by this court. Proudfit Loose-Leaf Co. v. Kalamazoo Loose-Leaf Binder Co., 230 Fed. 120, 144 C. C. A. 418. Neither of the other two patents is involved here, and the provisions of the decree respecting them are immaterial.

In the progress of the accounting had under the mandate of this court, defendants presented to the District Court a modified structure which they desired to manufacture and to substitute for the infringing devices, asking the court to determine whether such modified structure infringed the claims in question. The plaintiff objected to the form of the proceeding and to the jurisdiction of the court in that regard. The court overruled the objections, and after hearing the parties held that the modified binder presented did not infringe any of the patent claims in question, and that the injunction and decree would not be violated by its manufacture and sale and the reconstruction or remodeling of present infringing binders so as to make them conform thereto. This appeal is from that order.

[1] Assuming for the present that the district judge had jurisdiction to pass upon the question whether the modified binder infringes, and that such jurisdiction was invoked by proper procedure, we have no difficulty in agreeing with the conclusion of the district judge upon the question of infringement. Claim 13 of the patent involved reads thus:

"13. In a loose-leaf binder, the combination of a pair of swinging covers, one of which is provided with an internal recess or chamber, binding strips to which the loose leaves are secured extending between the covers, and *adjusting mechanism* for the strips situated within said recess or chamber in the cover, *and arranged to be operated from outside of the chamber without opening or uncovering the same.*"

Claim 15 differs from claim 13 only in substituting "adjusting screw" for "adjusting mechanism" and in substituting for the last clause (which we have italicized) the words "and adapted to be manipulated from without the same by means of a key." Claim 16 differs

appreciably from claim 13 only in substituting for the last clause of the claim the words "adapted to be operated by means of a key without opening or uncovering the chamber."

In sustaining the validity of these claims, the district judge held that:

"The vital and novel feature of the invention embodied in each of the three claims in suit is the means for operating and the operation of the adjusting mechanism, contained within the chamber of the cover, from without the cover, and without opening or uncovering the chamber."

This construction was, if not expressly, certainly by necessary implication, adopted by this court; and, as so narrowly limited, we upheld the validity of the claims as against the defense of lack of invention in view of the prior art. As this proposition does not seem to be questioned, we content ourselves with its mere statement.

In plaintiff's device, as disclosed by the patent, the adjusting mechanism was located in a recess of one of the covers of the book, a crosshead therein, to which one end of each of the binding strips was attached, being directly actuated longitudinally to the cover by the revolution of a screw-shaft, by use of a key inserted in the front edge of the cover. Defendants' adjusting mechanism there involved differed from plaintiff's only in these respects: It employed in place of the screw-shaft a bell-crank and worm; a key inserted in the lower edge of the cover engaged the head of the worm, the thread of which engaged the geared segment on the short arm of the bell-crank, the revolution of the worm (which lay transversely of the cover) moving the short arm of the bell-crank, and thus the crosshead to which the longer arm of the crank was attached. We held defendants' worm and bell-crank mechanism the equivalent of plaintiff's screw mechanism.

In defendants' modified structure approved by the District Court, the adjusting mechanism proper is the same as in the structure which both the District Court and this court held to infringe; that is to say, the same crosshead, worm, and bell-crank are employed. The means for operating that adjusting mechanism differs, however, in this respect: The keyhole in the cover is permanently stopped up and the worm is operated in both directions by a reversible ratchet lever within the recess in the cover; this lever when not in use lying flat in the chamber, the outer end of the lever being raised when in use. This operating mechanism is thus not without the cover, but is within it; and we entirely agree with the district judge that the adjusting mechanism cannot be operated "from without the cover and without opening or uncovering the recess or chamber in the cover"; and that the new and modified structure lacks "the vital and novel feature or element of the claims of plaintiff's patent." We see no merit in plaintiff's contention that the flexibility of the cover-flap permits the swinging of the ratchet lever, and thus the operation of the ratchet mechanism, without uncovering the recess containing it either when the sheets are lying on the front cover or when they are resting on the cover containing the mechanism. As well said by Judge Sessions:

243 F.—57

"Even though the binder be twisted or distorted out of its normal position and condition, the chamber in the cover must be open and uncovered to some extent before the adjusting mechanism can be operated."

Indeed, the lever cannot be reached without actually, entering the chamber, manually or otherwise. Moreover, practical operation of the mechanism "from without the cover" is impossible in any feasible or proper sense. As affecting the question of operation from without the cover, it may be noted that in the modified structure the adjusting mechanism can by no possibility be operated with the book closed, a feature to the existence of which in plaintiff's mechanism and in defendants' former structure we called attention on our former review. It should go without saying that the mere substitution for a removable key of a nonremovable and foldable key, located, for example, in the outer margin of the cover, and operable without opening the book or without access to the chamber, would not avoid infringement. But the instant case does not present the question of substituting one kind of a key for another, but of an operation from within, as vitally distinguished from an operation from without, the covers. Our decision on the previous review, that infringement was not avoided by the removal of the cover-flap, is not in any way inconsistent with the conclusions we have here announced. The former decision in that regard rather emphasizes the correctness of the decision here reached.

[2] Turning to the question of the authority of the District Court to determine whether the structure in question infringes: In denial of this authority plaintiff presents numerous considerations, the most prominent of which will sufficiently appear from our discussion.

That, strictly speaking, the court had jurisdiction to make the order complained of, is not open to question. The case had not gone to final decree, but was still pending in the District Court, and under its immediate jurisdiction and control; no modification of the interlocutory decree, as affirmed by this court, was made or asked, and so the case does not fall within the rule (Bissell Co. v. Goshen Co., 72 Fed. 545, 19 C. C. A. 25) which forbids the court below to modify a decree granting a perpetual injunction which has been affirmed by the appellate court. The permission to market a noninfringing structure implied in the determination that it does not infringe—including the right to change an infringing structure in the hands of users into a noninfringing device—is not a modification of a decree which forbids infringement and holds that certain other specified structures do infringe. The order complained of was thus not contrary to or outside of the mandate of this court. It is unnecessary to consider what the situation would have been had the case already passed to final decree.

Was the procedure employed irregular, as opposed to an established practice, or as against the rights of the plaintiff?

It must be conceded that the summary procedure employed is a step in advance of the usual practice in patent litigation. But this is not enough to condemn it; on the contrary, the shortening of litigation and the corresponding lessening of expense to litigants is to be commended, provided thereby the rights of the parties are fully protected and no improper burden is imposed upon the courts. For

the practice followed, a certain degree of precedent is to be found in respects more or less analogous. For instance, cases are not wanting which expressly recognize the propriety of obtaining the opinion of the court before using a device which may be the subject of contempt proceedings. In Norton v. Eagle Co. (C. C.) 59 Fed. 137, 139, which was a proceeding to punish a defendant for contempt in violating an injunction in a patent suit, the present Mr. Justice McKenna said:

"It would have been more considerate to have taken the judgment of the court on the Merriam machine before using it, and risking disobedience of the * * * court and injury to plaintiff."

And in a proceeding of the same nature (Bowers v. Pacific Co. [C. C.] 99 Fed. 745, 758) Circuit Judge Morrow called attention to the fact that "no effort was made to obtain the opinion of the court as to whether this excavator was within the scope of the injunction or not." In anti-trust cases it is the regularly established practice for the court to determine what reorganization will amount to a dissolution of the offending monopoly, and with that view to approve a given plan. In patent cases it is common practice for courts to state in their opinions that a structure having or lacking certain features would or would not infringe. And in such causes it is concededly within the power of the court, on application of a plaintiff, in connection with the accounting or otherwise, to consider and determine whether a structure not previously made the subject of evidence does or does not infringe.

We see, on principle, no adequate reason for denying to a court the like power to so act upon the request of a defendant. In respect to the practice we are considering, cases of trade-mark and unfair competition furnish, in our opinion, a strong analogy to patent causes. While there are decisions denying the power of a court in settling decree for unfair competition to prescribe that a certain form of package may be used, this court has expressly refused to recognize and follow those decisions (Coco Cola Co. v. Gay Ola Co., 211 Fed. 942, 944, 128 C. C. A. 440); and not only in the Coco Cola Case, but in other cases, has followed the practice there pursued (Merriam Co. v. Saalfield Co., 198 Fed. 369, 378, 117 C. C. A. 245; Knabe Co. v. American Piano Co., 232 Fed. 140, 146 C. C. A. 332). In the Coco Cola Case, Judge Denison, speaking for this court, pertinently said:

"It is clear that there are cases where the problem presented by the new form for which authority is asked will be so far away from the questions which the court has considered, and which the proofs cover, that it ought not to be solved without a new suit or a new proceeding; but there are many cases where the court will be as ready as it ever can be to decide such a question; and to refuse to do so, and compel a new suit, is unnecessarily to prolong uncertainty and litigation. Whether a given case falls within one or the other class, or whether opportunity for additional and summary hearing will properly take the case from the second [first] class into the first [second], can safely be left to the discretion of the court."

We think the principle thus stated applicable here. It is not, to our minds, a sufficient distinction that in the Coco Cola and other cases cited the approved package and markings were before the court on settlement of final decree; for in the instant case the accounting had not yet been completed.

There is no inherent injustice to a plaintiff in allowing a defendant to submit to the court his proposed noninfringing structure, rather than to submit himself to civil and even criminal action for contempt, as well as action for infringement. Plaintiff's right to elect whether or not to proceed against an infringer is not invaded by the exercise of a jurisdiction which it has already invoked.

The objection that the course taken below would subject the plaintiff to unnecessary and perhaps vexatious legal proceedings, and would impose an intolerable burden upon the courts, is not effective. A court is not bound to take cognizance of an application merely because it is presented; and it is to be presumed that it will do so only in a reasonably clear case, and where the question of infringement can be readily determined. In the instant case, there is not so much as a suggestion that full hearing was not had, or that, to determine the question involved, any actual trial was needed, or anything more than an inspection of the new structure and the construction of the court's decree as applied thereto.

The suggestion that a practice once adopted must be universally followed is without merit. It is not to be assumed that a trial court would permit vexatious applications, and, unless perhaps in a clear case of abuse of discretion, a trial court would not be compelled by an appellate court to act (National Co. v. Tubular Co. [C. C. A. 1] 239 Fed. 907, —— C. C. A. ——; Toledo Co. v. Kawneer Co. [C. C. A. 6] 237 Fed. at page 369, 150 C. C. A. 378); and an action which invaded the rights of a plaintiff would be reviewable in the appellate court. The action complained of is not subject to the criticism that it seeks the advice and counsel of the court. The statement in Bissell Co. v. Goshen Co., supra (72 Fed. at page 552, 19 C. C. A. at page 32), to the effect that "the function of a court is to consider and decide, not to advise," was used only to illustrate the binding effect on the lower court of the decision of the reviewing court. What has been said answers the propositions that the proceeding was a moot one, that the practice followed below would permit defendants to "cut and try indefinitely or until they succeed," and that similar application might be made even after final decree entered.

We conclude that the entertaining of the application in question was clearly within the sound judicial discretion of the District Court, and that that discretion not only does not appear to have been improvidently exercised, but, under the circumstances presented, appears affirmatively to have been properly exercised.

The order complained of is affirmed.