## SOUTHERN TEXTILE MACHINERY CO. v. FAY STOCKING CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

### No. 3189.

1. PATENTS ⬄328—INFRINGEMENT—MACHINE FOR UNITING KNIT FABRICS.
   The Davis patent, No. 1,050,432, for a machine for uniting knit fabrics claims 1, 7, and 10, *held* not infringed by a particular style of machine used by defendant.

2. PATENTS ⬄328—INFRINGEMENT—MACHINE FOR UNITING KNIT FABRICS.
   The Davis patent No. 1,050,432, for a machine for uniting knit fabrics, claims 1, 7, and 10, *held* not infringed by a particular style of machine used by defendant when equipped with a straight needle, but infringed if such machine was equipped with a Davis needle.

3. PATENTS ⬄324(6)—INFRINGEMENT—DEFECT IN PROOF—DISMISSAL OF BILL—DETERMINATION OF APPEAL.
   Bill for infringement of patent should not have been dismissed for the easily remediable defect in the proof as to whether or not defendant company did or did not use certain infringing needles, but decree will not be directed for plaintiff; rather the subject should be followed up, on motion of the court, if necessary, far enough to develop the facts.

4. PATENTS ⬄328—VALIDITY—MACHINE FOR UNITING KNIT FABRICS.
   The Davis patent, No. 1,050,432, for a machine for uniting knit fabrics, claims 1, 7, and 10, *held* valid.

5. PATENTS ⬄318(4)—PATENTED IMPROVEMENT—PROFITS RECOVERABLE.
   Where the patented improvement in a machine for uniting knit fabrics has directly to do only with the shape of the needle, the patentee, suing for infringement, cannot recover the profits of using the entire machine, other parts of which have been properly, though unnecessarily, put into claim combination with the needle, but must be confined to profits resulting from the use of the improved, as compared with an unimproved, needle.

6. PATENTS ⬄322—SUIT FOR INFRINGEMENT—RECOVERY OF PROFITS.
   In suit for infringement of patent, before any accounting is ordered for profits, as distinguished from such damages as might be shown by any of the accepted measures, the trial court should be satisfied there is some theory of recovering profits plausible enough to justify an effort to establish it.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Southern Textile Machinery Company against the Fay Stocking Company. From a decree dismissing the bill, plaintiff appeals. Reversed, and case remanded.

See, also, 243 Fed. 917.

Obed C. Billman, of Cleveland, Ohio, for appellant.

Hull, Smith, Brock & West, of Cleveland, Ohio, and A. V. Groupe and Cyrus N. Anderson, both of Philadelphia, Pa., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

DENISON, Circuit Judge. The appellant, as owner of patent No. 1,050,432, issued January 14, 1913, to Davis, for a machine for uniting knit fabrics brought suit against the appellee for infringement.

The court below dismissed the bill, on the theory that, so far as the claims were valid, they were not infringed.

[1] The defendant was using, in its factory, two styles of machines: One, the Hepworth; the other, the Beattie. On plaintiff's theory of construction of the patent, all the claims sued upon were infringed by Beattie, and part of them by Hepworth. As to the alleged infringement by Hepworth, we agree substantially with the reasoning, and wholly with the conclusions, of the District Judge. Claim 11, in order to be distinguished from the other claims must be treated as directed broadly to the setting of the chaining needle in parallel relation to the impaling pins, instead of at a slight angle thereto. When this change is made with a straight needle, as is done by Hepworth—assuming that there is parallelism, instead of inclination—we see no room for invention; indeed, if the straight needle were set close enough to the pins to get the benefits of parallelism claimed for Davis, the device probably would not operate. If the needle were bent toward the point, to get parallelism near the point in spite of inclination elsewhere, we would then have essentially the "offset" of the other claims.

As to infringement of claims 7 and 10, set up against Hepworth, appellant's chief criticism of the opinion below is that it construed the "offset" of the claim as calling for a bend or shoulder near the point of the needle, and that this was erroneous, because in the interference proceedings the Patent Office tribunals had construed "offset" as referring to the projection of the needle itself from its carrying bracket or shank, and therefore the same meaning must now be given to the word. Appellant is partly right and partly wrong. It was decided that the term "offset," as found in Davis' original claims, included this type of shank or bracket shoulder, and, since this type was old, it was held that Davis could not make the claim, and the interference was dissolved. Thereupon the claims were modified, so. as to refer only to the specific type of offset or shoulder shown and described, which was located near the point. In this way, Davis became estopped now to claim that broader meaning for "offset" which he then abandoned. If it might be that a new claim, formulated after the interference, was capable, on its face, of the broader construction, the consideration just stated would make this result impossible.

This consideration does not reach claim 1, which had a different history; but we are not satisfied that the "offset depressed tapered portion" of this claim is not the same thing as the "offset pointed free end" of claim 7, or as the "tapered offset portion" of claim 10; nor does the Hepworth stitch-carrying guide arm have the "yielding" function and operation which characterize this claim. To interpret "yielding" liberally enough to reach Hepworth would make it reach, also, the earlier art.

[2] The Beattie machine was so constructed that it would carry either a straight and inclined needle, like the old art, or a parallel and offset needle, like Davis. We see no reason to doubt—and it must be conceded—that, if the Beattie machine were equipped with the Davis needle, it would be an infringement of claims 1, 7, and 10 of the pat-

ent. It is equally clear that, if equipped with a straight needle, the Beattie machine would not infringe, for the same reasons that the Hepworth does not. The Beattie machines used by defendant at the time of the trial, and one of which was produced as an exhibit, and the Beattie machines used in another factory, and with which alone the witness Vine was familiar, used the straight needles only. Appellant's president visited the defendant's factory just before the filing of the bill, and testifies that the Beattie machines he there saw were using a "humped" needle. He further testifies that he asked a dealer in this class of supplies to order for him from the manufacturers of the Beattie machine a needle such as they were furnishing the users of their machines, and he produces and identifies the needle which he received from the dealer as having been furnished to the dealer by the Beattie Company in response to the order which the witness had caused to be sent in. The exhibit so produced was essentially the Davis needle, and its use would complete an infringing combination. We cannot think that the state of the proof in this respect justifies dismissing the bill for lack of evidence of infringement. Appellant's witness failed to say, in so many words, that the exhibit produced by him was a duplicate of the needle which he saw in use in defendant's factory; but we think this is the unmistakable purport of his evidence. His inspection was hasty; but, if he were mistaken, it would be easy for defendant to say so; on the contrary, defendant offered no proof on this point.

[3] The fact as to whether the defendant did or did not use these infringing needles can hardly be a matter of dispute, and must be easily ascertained. While we think the bill should not have been dismissed for this defect in proof, yet we are not inclined to direct a decree for appellant. The subject should be followed up, on motion of the court, if necessary, far enough to develop the facts. The case should be set down for a further hearing, at which defendant may offer proof to meet, and plaintiff may offer proof to strengthen, the prima facie, though vague and unstatisfactory, case already made. Butterfield v. Miller (C. C. A. 6) 195 Fed. 200, 210, 115 C. C. A. 152; Ferrell v. Prame (C. C. A. 6) 206 Fed. 278, 124 C. C. A. 342.

[4] We think these claims, 1, 7, and 10, are valid. Owing to the contest in the Patent Office over their validity, and the action taken there by successive tribunals, the claims have more than the usual support in the presumption of validity arising from issue. The improvement made seems, theoretically and apparently, to have utility, and its considerable use in the Davis machine, and its now supposed adoption by Beattie and defendant, confirm its utility. We cannot adopt the view that it was merely an improvement in the needle, and therefore—perhaps—not rightly protected by being claimed in combination with the machine. Langan v. Warren Co. (C. C. A. 3) 184 Fed. 720, 107 C. C. A. 631. True, the only substantial change was in the form of the needle; but this required corresponding changes in the form and adjustment of co-operating parts, and the offset permitted this needle and the other parts to unite in producing a chain

of stitches and delivering it from the needle in a way that would not otherwise have been possible.

[5, 6] However, the fact that the patented improvement has directly to do only with the shape of the needle has another bearing. The patentee cannot be entitled to recover the profits of using the entire machine, other parts of which have been properly, though unnecessarily, put into claim combination with the needle. The profits to be recovered must therefore be confined to those resulting from using the Davis needle, as compared with the use of a straight needle. We cannot foreclose an inquiry into the existence of some intelligible basis for such comparison, but we think that before any accounting is ordered for profits, as distinguished from those damages which might be shown by any of the accepted measures (e. g., see U. S. Frumentum Co. v. Lauhoff [C. C. A. 6] 216 Fed. 610, 617, 132 C. C. A. 614), the trial court should be satisfied that there is some theory of recovering profits plausible enough to justify an effort to establish it (Ludington v. Leonard [C. C. A. 2] 127 Fed. 155, 62 C. C. A. 269; Merriam v. Saalfield [C. C. A. 6] 198 Fed. 369, 371, 117 C. C. A. 245; Rushmore v. Badger Co. [C. C. A. 2] 198 Fed. 379, 381, 117 C. C. A. 255; Gaines v. Rock Spring Co. [C. C. A. 6] 226 Fed. 531, 543, 141 C. C. A. 287).

It is not important to pass upon the validity of the other claims sued upon. They are not broader than 1, 7, and 10, and cannot affect the scope of injunction or accounting.

The opinion of the court below (Westenhaver, District Judge), except with reference to the Beattie machine, follows:

Complainant's bill charges infringement by defendant of claims 1, 5, 6, 7, 8, 9, 10 and 11 of letters patent No. 1,050,432, issued January 14, 1913, to Edwin O. Davis. The answer denies infringement, and also sets up the invalidity of complainant's patent. The defendant is using what is known as the Hepworth machine, which, it is claimed, infringes claims 1, 7, 10 and 11 of said patent, and also what is known as the Beattie machine, which, it is said, infringes claims 5, 6, 8 and 9 of said patent.

The Davis patent was issued on application filed April 22, 1909, serial No. 491,511. The specifications and accompanying drawings describe the invention as relating to improvements in machines for uniting knit fabrics, the machine being adapted to unite or connect the meeting edges of two pieces or portions of knit fabric by joining the loops of the adjacent edges thereof by means of an elastic seam or chain of stitches. There are three pages and seven figures of illustrative drawings. The specifications comprise five pages. Apparently the application, when made, covered numerous improvements in a machine for uniting knit fabrics, but the invention, as finally allowed by the Patent Office, is, as a matter of fact, limited to a single part of the machine known as "a stitch-carrying guide arm." All of the other elements of the machine and of the combination are on this hearing conceded to be old and to have been a part of the prior art.

The parts of the machine with which this stitch-carrying guide arm is combined need to be only briefly described. They consist of a circular disc or dial, varying in size on different machines from approximately 12 to 20 inches in diameter, around the periphery of which, and extending outwardly therefrom, are projected impaling pins. These pins are about an inch in length and are in a plane horizontal to the dial. These pins are adapted to receive the looped edges of the two pieces of fabric to be united or joined together by loops or stitches. The edges of the fabric are placed by hand on these impaling pins, and the dial is rotated by the operating mechanism at

slow speed, bringing the edges of the fabric under the stitching or looping
mechanism of the machine. This mechanism consists of a thread-carrying
needle, a thread-carrying looper, and the stitch-carrying guide arm. The
thread-carrying needle and the looper, operating reciprocally, and co-operat-
ing with the guide arm, perform the function of stitching or looping to-
gether the two edges of the knit fabric.

In other and similar machines for uniting knit fabrics, the stitch-carrying
guide arm is called a "stitch finger," or "stitch needle," and sometimes a
"chaining needle"; but in all of them the function to be performed by the
guide arm is exactly the same. The method of operation is also precisely
the same. The controversy here comes down to a few limited features of the
construction, method of attachment and of operation of the stitch-carrying
guide arm of complainant's machine as compared with the machines alleged
to infringe it, and others.

The mechanism by which the dial, thread-carrying needle and the looper,
and the guide arm, are operated, need not be described, because these features
do not enter into the alleged infringment. Claims 1, 7, 10 and 11 are chiefly
in controversy. They are as follows:

"1. In a machine for uniting knit fabrics, a series of impaling pins, a yield-
ing stitch-carrying guide arm provided with an offset depressed tapered por-
tion extending above a plurality of the adjacent loops of fabric to be united
on said impaling pins, and a reciprocating thread needle and looper co-operat-
ing with said offset tapered portion of said guide-arm."

"7. In a machine for uniting knit fabrics, a series of impaling pins, a stitch-
carrying guide arm comprising a shank portion and an offset pointed free
end extending in a horizontal plane parallel with and in close proximity to
a plurality of said impaling pins and adapted to ride upon the adjacent loops
of fabric to be united on said impaling pins, and a reciprocating thread needle
and thread-carrying looper co-operating with said tapered offset free end of
said guide arm and inclosing the same in a chain of elastic stitches extending
through the subjacent loops of fabric a substantial distance from the zone
of initial stitch formation by said thread needle and looper."

"10. In a machine for uniting knit fabrics, a ring of impaling pins, a re-
ciprocating thread needle and thread-carrying looper, and a stitch-carrying
guide arm comprising a shank portion and a tapered portion offset from
said shank portion and extending in a horizontal plane parallel with and
in close proximity to a plurality of said impaling pins said tapered offset
portion being adapted to ride in frictional engagement with the loops united
on said impaling pins by the chain of stitches and forming a zone of retreat
for the stitches.

"11. In a machine for uniting knit fabrics, a series of impaling pins, a
stitch-carrying guide arm terminating in a tapered free end extending parallel
with and in close proximity to a plurality of said impaling pins, and a thread
needle and thread-carrying looper adapted to pass beneath and over said ta-
pered free end, respectively, and forming a chain of stitches about said tapered
free end and through the subjacent loops of fabric on said impaling pins
for a substantial distance from the zone of initial stitch formation."

These claims are said to be infringed by the chaining needle or stitch-
carrying guide arm of the Hepworth machine, used by defendant at its ho-
siery factory at Elyria, in this district. All the elements in the combination
described by these claims—the dials, thread-carrying needle, the looper and
guide arm—are common in machines for uniting knit fabrics. Prior patents
and machines sold and used in the United States at least two years prior to
the date of complainant's application will be referred to later in this opinion.

That which is new in these claims, if anything is, is the yielding feature
of the stitch-carrying guide arm, and the offset depressed tapered portion of
the guide arm. The guide arm of the anticipating machines and patents is
tapered, but the free end is not offset nor depressed. The base end by which
the guide arms are fastened to the machine is not yielding in the other ma-
chines. The free end does not extend parallel with the subjacent impaling
pins, and is not adapted to ride upon and in frictional engagement with the
impaling pins, or the fabric being united, but, on the contrary, does not come

into contact with the impaling pins, nor ride upon the pins or fabric, and is adjusted at a slight angle or incline from the fixed base to the tapered free end.

It is claimed for the Davis machine that this type of guide arm operates better when no fabric is being united, and that a closer elastic stitch may be made thereby; also that the spring at the base, to which the yielding feature is due, permits the arm to be lifted upwards and the dial to be moved backwards, if necessity therefor arises, and that by depressing the guide arm upon the pins and creating a frictional engagement with the subjacent pins, the stitches are shed off more efficiently when the fabric is not being united.

Respecting claim 11, the only new features claimed are that the tapered free end extends parallel with a plurality of impaling pins, and that this free end extends a substantial distance beyond the zone of initial stitch formation. The new features above described are said to constitute patentable invention, not disclosed by the prior art, and are infringed by the guide arm of the Hepworth and Beattie machines.

The file wrapper of the Davis patent shows an extended history. The application was filed April 22, 1909, and, although diligently prosecuted, the patent was not issued until January 14, 1913. Numerous prior patents were cited by the examiner of the Patent Office against the claims of the application as originally made, and as amended from time to time. An interference was finally declared between the application and others then pending. The issue of this interference was set forth in a count as follows: "In a machine for uniting knit fabrics, the combination with a series of impaling pins, and a reciprocating thread needle and looper; of a guide arm provided with a pointed offset free end carried above and in alignment with the adjacent loops to be united on said impaling pins, and adapted to receive and carry a chain of stitches as formed by said reciprocating thread needle and looper."

The primary examiner held that patentable novelty or intention was not stated in this count, and an appeal was taken therefrom to the Board of Examiners in Chief, which affirmed the decision of the primary examiner. A further appeal was taken from this decision to the Commissioner of Patents, resulting in affirmance of the Board's decision.

Among the prior patents cited in the Patent Office, showing anticipation, was a British patent to Julius Koehler, No. 16,937, dated August 23, 1901. Machines embodying the Koehler patent were made in Germany, imported into the United States as early as 1906, and were sold and used more than two years prior to the Davis application, in various factories. The stitch-carrying guide arm of the Hepworth patent is said in these interference proceedings to resemble the guide arm of the Koehler patent, and of the German machine, much more closely than the guide arm of the applicant.

An examination of the three opinions rendered in these interference proceedings shows that the features, if any, considered to be patentable, were strictly limited to the difference in construction between the guide arm or stitch needle shown in the drawings and specifications of the Davis application, namely, the offset depressed tapered free end, and its yielding feature. The advantages in operation, and the increased efficiency from this method of construction as already set forth, are the only features, it appears, justifying the allowance of a patent with claims strictly and correctly embodying the same. The stitch needle or guide arm of the Koehler machine was straight, with a tapered free end; but it was not offset and depressed, and was not so adjusted at the shank or base as to yield, nor was the free end parallel to the subjacent impaling pins, and did not ride on these pins or the fabric to be united.

In view of this history, complainant's patent and claims thereof must be limited to these features. The applicant has limited himself in the proceedings in the Patent Office, and cannot here ask for a broader interpretation. In my opinion, the guide arm or chaining needle of the Hepworth machine does not possess any of these features, and therefore does not infringe. It is about 1¼ inches in length; it is straight, and tapered to a point. It is

not attached at the base, so as to yield. It has no offset depressed tapered free end. It inclines slightly from the base to the free end. Its free end is not parallel with, nor adapted to ride upon or in frictional engagement with, the subjacent impaling pins or the fabric to be united. It has, therefore, none of the distinguishing features of the Davis stitch carrying guide arm upon which the patent was allowed. It is in all substantial respects a reproduction of the chaining needle of the Koehler machine.

The contention is made in argument that the guide arm is offset from the slotted base by which it is attached to the operating mechanism, and that this embodies the offset depressed tapered free end of the Davis machine. This contention cannot be sustained. The offset and depression of the Davis machine is of its tapered free end, and not of its base.

The contention is further made in argument that the Hepworth chaining needle is yielding because the weight of the metal of which it is constructed is so light that the tapered end will spring or yield at pressure, and thus come into contact with frictional engagement with the subjacent impaling pins and fabric to be united. This contention cannot be sustained. An examination of the needle shows that a great deal more pressure is necessary to cause the tapered free end to yield than is present during the operation of the machine. Even if enough pressure were applied to the free end, it would do no more than bring the point into contact with the subjacent impaling pins, and would not become parallel to or ride upon and in frictional engagement with the impaling pins or a plurality thereof. Its slant or angle of incline and base, its method of performing its function when the machine is in operation, are substantially, if not exactly, those of the Koehler machine. I see no true resemblance between it and the stitch-carrying guide arm of the Davis patent.

The charge of infringement as to all the claims of the patent, except claim 11, must, as to the Hepworth machine, be denied. * * * Claim 11, above quoted, it will be observed, is not limited to the yielding feature, the offset depressed tapered free end, adapted to ride upon the subjacent impaling pins or fabric, or in frictional engagement therewith. Defendant contends that, unless the language of claim 11 is to be limited, this claim must be held to be invalid. I am of opinion that the language of claim 11 does not admit of limitation to these features. I shall therefore consider whether or not it is valid.

If the guide arm of claim 11 is distinguishable from the prior art, it must be because the tapered free end extends parallel with a plurality of the subjacent impaling pins, and because the tapered free end extends a substantial distance beyond the zone of initial stitch formation. Complainant claims no more novelty under claim 11 than is embodied in these features. It is true the guide arm or chaining needle of the prior art does not show a tapered free end parallel with the impaling pins, as already stated. The free end inclines at a slight angle. That free end is in close proximity to a plurality of impaling pins, but is not parallel with the pins.

The tapered free end of the guide arm of the prior art does extend some distance beyond the zone of initial stitch formation. The drawings of the Koehler patent are not very complete, or easily read in this respect; but all the witnesses who bought and used the Koehler machine from the year 1906 to the present time testify that the end extended from three to five pins beyond the zone of initial stitch formation. The drawings of the Davis application show the end extended only three pins beyond this zone. The guide arm actually used on the Davis machine is adapted to carry six or more.

In my opinion no patentable invention is involved in either of these alleged new features. If for any reason the tapered free end of the guide arm or chaining needle was not long enough, no invention is required to make it longer. Mechanical skill of the lowest order would be sufficient. If for any reason the tapered free end should be parallel with instead of being inclined at a slight angle to the subjacent impaling pins of the complainant's patent, no invention is required to make the change. Mechanical skill of the lowest order would be sufficient for the purpose.

As was stated by the witness Arnold, an employé of complainant, and called as its expert, claim 11 is so framed as to cover any form of guide arm that

would be practicable. In this opinion I am sustained in part by the opinion of the Board of Examiners of the Patent Office, who say: "Nor do we see that the mere extension of the arm *h* (stitch finger) of Koehler's machine, so that it will receive a plurality of stitches, instead of a single stitch, amounts to invention."

In my opinion, claim 11 is invalid.

For the purpose of the modifications and the further inquiry herein indicated, the decree is reversed, and the case remanded. The appellant will recover the costs of this court.