## UNION ELECTRIC WELDING CO. v. CURRY et al.

(Circuit Court of Appeals, Sixth Circuit. February 17, 1922. On Application for Rehearing, April 15, 1922.)

No. 3572.

1. **Patents ⊙⇒322—Different forms of infringing article may be included in accounting.**

Where defendant, before an interlocutory decree for infringement, made and sold two forms of the infringing tool, one with a handle for hand use, and the other to be secured to a bench, but equivalent in mode of operation, both may be included in an accounting for profits, though only the hand tool was mentioned in the evidence.

2. **Patents ⊙⇒318(3)—Method of computing profits of infringement.**

Under suitable conditions, profits of infringement may be computed by subtracting the total investments in the infringing business from the total receipts of its conduct and liquidation, with allowance for profits or losses of any relatively small noninfringing departments.

3. **Patents ⊙⇒318(6)—Right of infringer to offset losses against profits, by periods.**

While it is often proper, on an accounting for infringement, to refuse to deduct losses in one period from profits made in another, there is no invariable rule that each calendar year must stand by itself, and each case must be determined on its own facts. Losses incurred by an infringer during the first year, while establishing its business and trade from which profits were afterward made, *held* properly deductible from such profits on an accounting.

4. **Patents ⊙⇒318(3)—Infringer held accountable for profits made from contributory infringements.**

Where the owner of a patent for a tool for twisting wire ties, used for tying bags of cement, etc., and the maker of an infringing tool, both followed the same method of disposition, each furnishing the tool without profit to users, and making its profit from the sale to them of ties which could be used only with its own tool, and without which the tool could not be used, such sales by the infringer *held* a contributory infringement, and on an accounting the infringer *held* chargeable with the profits made on the ties.

5. **Patents ⊙⇒318(3)—On accounting for profits of infringement, standard of comparison rule held not applicable.**

The fact that, since a decree finding infringement by defendant of a patent for a tool, a noninfringing tool, not previously on the market, has been found which successfully competes with the patented tool, *held* not to affect the measure of defendant's liability for profits made from its infringement.

Appeal from the District Court of the United States, for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by John P. Curry and Clifford L. Miller against the Union Electric Welding Company. From the final decree, defendant appeals. Modified and affirmed.

See, also, 230 Fed. 422, 144 C. C. A. 564.

Chas. E. Brock, of Cleveland, Ohio (Almon Hall, of Toledo, Ohio, on the brief), for appellant.

Samuel Owen Edmonds, of New York City, and Wilbur Owen, of Toledo, Ohio, for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

279 F.—30

DENISON, Circuit Judge. Upon a former appeal, this court held that the patent involved (Curry, No. 908,649, January 5, 1909, for a "tool for twisting wire ties") was valid and infringed. Curry v. Union Co., 230 Fed. 422, 144 C. C. A. 564. Upon the accounting thereafter had in the court below, the master reported that the defendant's profits from the infringement were $45,147.50, and from a final decree for this amount the defendant again brings the case here.

[1] The tool, which was before the court upon the former appeal as a sample of defendant's infringement, was strictly a hand tool. The operator grasped the bag in one hand, and, after adjusting the tie to the neck of the bag and upon the hooks of the tool, seized the tool in the other hand and pulled it away from the bag. By this operation, the tie was twisted. Upon the accounting, it appeared that many of the tools sold by defendant—mostly, if not all, before the decree of this court—had been so-called bench tools, in which the tool had been fastened to a bench, and the operator placed the tie in the hooks of the tool, put the neck of the bag in position to bear against the slack of the tie, and then pulled the bag away from the tool. Excepting as to this method of operation, the bench tool did not differ from the hand tool, save in some details which made the former a closer copy of the patented construction than the latter was.

For application of the claims of the patent, the equivalency of the two is clear. The part which, in Curry, is called a handle, and is in effect a spirally grooved nut, which, by its motion longitudinally of the inclosed spiral screw shaft, causes the latter to revolve, and which handle is held in the operator's hand, and by him moved along longitudinally of the screw shaft, takes the form, in the defendant's bench tool, of a frame which is fastened to the bench and held there while the operator pulls the shaft longitudinally through it. This difference is a mere incident to the reversal of operation. Claim 3 is not infringed by the bench tool, lacking the swiveled end knob, but this is not material to the accounting. The broader claim, 2, is a better basis for a finding of damages or profits than claim 3 could be.

It was at least within the discretion of the master, subject to the supervision of the trial court, to include the bench tools in the accounting, although they had not been mentioned in the evidence prior to the interlocutory decree. See Kalamazoo Co. v. Proudfit Co. (C. C. A. 6) 243 Fed. 895, 899, 156 C. C. A. 407, and cases there cited. Indeed, in a case where, as here, the adoption of the second form preceded the interlocutory decree, it is difficult to see how liability for its use could survive the accounting and remain enforceable in another suit.

The master made a finding of damages based upon certain theories which were challenged by defendant in its exceptions; but since the final decree was based wholly upon the finding of profits, and there was no overlap or duplication between the two bases for recovery, we do not find it necessary to consider any of the conflicting theories as to these damages.

Upon the subject of profits, the first issue is as to the method of computation and of apportionment, so far as the latter is necessary. Upon this issue we may, without prejudice to defendant, assume that the

questions are the same as if the patent had been upon the tie itself and the defendant's business had been the making and selling of infringing ties. It appears that the business began in 1912. In that year there was a loss of $1,018.81. During the years 1913, 1914, and 1915, there were large profits. After the former decree of this court, as rendered early in 1916, the defendant endeavored to continue its business during that year, with such changes in its tool as were thought to avoid infringement, but with such lack of success that, in the year 1916, there was a loss of $1,237, and, in the early part of 1917, defendant went out of business, selling all its machinery, tools, materials, etc., on hand, and distributing the proceeds among its stockholders, save for the portion of the proceeds which was impounded by a proceeding collateral to this accounting.

During this whole period, it engaged in one relatively trifling noninfringing branch of business, in which it met a loss of $1,781, and in another noninfringing enterprise, amounting to less than 5 per cent. of the total business, and in which it made some profits. The profits, the master apportioned, allocating to the noninfringing branch the same percentage of total profits that the noninfringing sales bore to the total sales. The profits to be deemed the result of the infringement were then computed by putting upon one side of the account all the money that had been paid back to stockholders as dividends, or paid out in this patent litigation, or had been paid or was owing to them on the liquidation, and putting upon the other side all the investments in the business, plus interest since the dates of the investments. The balance was deemed to be the profits of the entire enterprise. From this the master deducted the profits allocated to the noninfringing branch, 4.36 per cent., and to the balance added the losses which had been made in the noninfringing business—since these losses had been met out of, and thus reduced, the final infringing profits—and added, also, the losses for 1912 and 1916, under the rule which forbids infringers to deduct losses for one period from profits of another.

[2] This is substantially the method of ascertaining infringing profits which was applied and approved in the Seventh Circuit in Schmertz Co. v. Western Co. (D. C.) 203 Fed. 1006; Id., 226 Fed. 730, 734, 141 C. C. A. 486, and we think it wholly appropriate to the facts of this case,[1] with one exception. It is often true that losses in one period may not be deducted from profits in another (Crosby Steam Gage & Valve Co. v. Consolidated Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809; Canda Bros. v. Michigan Co. [C. C. A. 6] 152 Fed. 178, 81 C. C. A. 420), but the applicability of this rule must depend upon the facts of the case

[3] There is no invariable rule that each calendar year must stand by itself. The losses for 1912 ($1.018), this being the introductory year, naturally seem to be a part of the expense incurred in working up the business and bringing about the profits in the later period, and we think the defendant should have credit for these losses. This credit the defendant had received under the method here adopted in arriving at and stating the net profits of the entire enterprise, and it was there-

[1] The interest on capital employed in the noninfringing business is so small it may be disregarded.

fore error to withdraw the credit by adding the $1,018 to the actual profits of the entire period.

The losses for 1916 illustrate the application of the rule, as those for 1912 do its exception. Those of 1916 were incurred in an attempt to find a successful method of continuing the business in a noninfringing way after the decree, and there is no reason why the defendant should have credit for them in ascertaining the profits which came from the infringement before the decree. They pertain to a distinct period. It was therefore correct to add the sum of $1,237 to the entire profits.

[4] The remaining question, and the one chiefly argued, is whether the profits upon the tie business must be accounted for at all as being profits realized from infringement. The plaintiffs adopted the general plan of business illustrated by the Heaton-Peninsular Case, 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, and the Dick Case, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880. They did not sell this tool at a profit but placed it with those who used bags in great quantities, like cement manufacturers, and who desired to tie their bags by using this tool. The plaintiffs then derived their profit from the business of making wire ties suitable for use in this tool and selling them to the users of the patented machine. The device could not be operated, except with ties of the precise construction made by the plaintiffs, and the ties which they made were of no use, excepting in the patented machine. There was no patent upon the ties. The defendant adopted precisely the same method of business in connection with its infringing machine. It made a large number of machines and placed them with the bag users upon the payment of a nominal charge—somewhat less than the actual cost of construction. The special wire tie which it made would not fit and was not adapted to plaintiffs' patented machine, and could be used nowhere excepting in defendant's infringing machines, and likewise these machines could not be used, excepting with this particular tie which was made by defendant and by no one else.

The record makes a clear case of the practical destruction of plaintiffs' business by defendant's competition, which was thus based upon the infringement. However, since the basis upon which plaintiffs' profits rested—the right to insist upon the use of their ties in the patented machines—has been declared unlawful by the Clayton Act (38 Stat. 730) and by the Motion Picture Patents Case, 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, questions are suggested as to the right to recover these damages. It may be for this reason that the master's recommended judgment is rested wholly upon the theory of profits. In view of our conclusion that the master is right in this theory, it becomes unnecessary to consider whether the same or a similar result would be reached upon the other branch of the case.

Upon the subject of profits, the Clayton Act and the Motion Pictures Patent Case are clearly irrelevant. Whether the contracts, if there were any, that the users of the patented machine should buy ties only from plaintiffs, or the contracts, if there were any, that the users of defendant's infringing machines should buy ties only from defendant,

were valid or invalid, does not bear upon the subject of profits. The defendant actually made tools infringing the patent. It sold no ties to the users of the patented machine. It sold ties only to the users of the infringing machine; and it had no other business (save for the 4.36 per cent. above noted) except making and placing the infringing machines and furnishing the materials for their use. This furnishing was contributory infringement, according to all the tests which have been applied. Loew Filter Co. et al. v. German Co. (C. C. A. 6) 107 Fed. 949, 47 C. C. A. 94. There was not only the implied intent to participate in infringement, which appears when the article furnished has no other possible use, but there was the express intent.

Defendant's entire business was composed of the direct infringement committed by making and putting out infringing machines and the contributory infringement committed by devising and furnishing the special facilities, without which the infringing use could not have occurred and continued. It was not the innocent dealing in a commodity which the purchaser may misuse. From its conception, through birth and life, and until its death, it was an indissoluble part of a plan to destroy plaintiffs' rightful monopoly in the use of their patented machine. No reason is apparent why its profits should not be treated as received in trust for plaintiffs upon the same principle which controls the profits of a direct infringement. If the infringing users of the machines had chosen to manufacture their own ties, the margin which would have corresponded to a manufacturer's profit would have been a part of the gains and advantages received by the users through the adoption and employment of the infringing tools, and the same character attaches to such ties when dealt in by another manufacturer who participates in the tort. Such special supplies, specifically intended to aid and accomplish infringement, have been expressly held to demonstrate contributory infringement in the Heaton-Peninsular Co. Case, supra, 77 Fed. at page 297, 25 C. C. A. 267, 35 L. R. A. 728, and in the Dick Case, supra, 224 U. S. at page 33, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, and upon this point neither of these cases has been overruled or questioned. Morgan Envelope Co. Case, 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500, is not applicable. It involved in the main the distinction between repairs and reconstruction, or the analogy of that distinction where a temporary supply was an element of the claim. See comments in 77 Fed. at page 299, 25 C. C. A. 267, 35 L. R. A. 728.

The liability to account for profits from an article that does not, by itself alone, infringe, and under conditions analogous or parallel to those here, is sustained by Wales v. Waterbury Co. (C. C. A. 2) 101 Fed. 126, 129, 41 C. C. A. 250; Rumford Co. v. New York Co. (C. C.) 136 Fed. 873; Consolidated Co. v. Diamond Co. (C. C. A 2) 232 Fed. 475, 146 C. C. A. 469, affirming (D. C.) 226 Fed. 455, 461.

[5] Defendant undertook to escape by proof to the effect that, since the decree, a noninfringing tool (not before on the market) has found substantial acceptance among those who were using the defendant's device, and that defendant's successor is furnishing the machines and ties for them and is thereby competing efficiently with plaintiffs. From this proof it draws the inference that during the infringing period it

might have supplied the innocent machines and ties therefor and made the same profits which it did make. It thereupon invokes the "standard of comparison" rule. McCreary v. Pennsylvania Co., 141 U. S. 459, 463, 12 Sup. Ct. 40, 35 L. Ed. 817; Southern Co. v. Fay Co. (C. C. A. 6) 259 Fed. 243, 246, 170 C. C. A. 311. Whatever may be the extent or limitations of this rule, we cannot think it applicable here. The alternative is not one of mere use, supposedly presented to the defendant alone for its choice. The question—if open—would be whether the substitute would have met equally well the desires of the trade, under the conditions then existing, and when not containing the specific patented improvement. This is too problematical to justify denying to plaintiffs any substantial recovery. The achievements of defendant's successor, at a later period and under other commercial conditions, are not convincing.

The decree is affirmed, except for the modification stated, and the case is remanded for that purpose. The costs of this court will be divided.

### On Application for Rehearing.

PER CURIAM. Upon an application for rehearing, presented by new counsel for the appellant, it is insisted that the master's computation of profits depended upon treating the entire selling price as the value of the assets which had accumulated from the investment of the profits of the infringing business; while in truth the greater part of this selling price was received for good will, or as "nuisance value," paid by the competitor who bought the business.

It would be enough either to say that this fact does not clearly appear by the record, or to say that this objection to the master's finding, now thus made for the first time, is too belated for consideration. However, we prefer to look further, and to point out that the amount allowed for profits was not substantially different from the amount found for the damages which plaintiffs suffered in their own business and by reason of the infringing competition. The objections relied upon to prevent a recovery of damages do not go to the substantial equities of the matter, even if they might be sufficient—which we do not decide—to prevent recovery under strict legal rules. Hence we are satisfied that no miscarriage of justice will result if the judgment is allowed to stand.

The application for rehearing will be denied.