**WILKIE v. SANTLY BROS., Inc., et al.**

District Court, S. D. New York.
Nov. 14, 1940.

Phillips, Nizer, Benjamin & Krim, of New York City (Louis Nizer, and Arthur B. Krim, both of New York City, on the brief; George B. Harris, of San Francisco, Cal., of counsel), for plaintiff.

Julian T. Abeles, of New York City, (Julian T. Abeles, Leopold Bleich, and Jack J. Katz, all of New York City, of counsel), for defendant Santly Bros., Inc.

Abraham L. Berman, of New York City, for defendant Bernice Petkere.

MANDELBAUM, District Judge.

By a decree of this court, a Special Master was appointed to take, ascertain and state the profits derived by the defendants and the damages suffered by the plaintiff. This reference arises out of a copyright infringement action of an unpublished song composed by the plaintiff entitled "Confessing". The defendant, Santly Bros., Inc. (hereinafter called Santly), was the publisher, and the defendant, Petkere, the composer, of the infringing music of the song entitled "Starlight Help Me Find the One I Love". The plaintiff was successful in establishing the infringement of his composition. D.C., 13 F.Supp. 136; 2 Cir., 91 F.2d 978, certiorari denied 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568. After reargument in the Circuit Court of Appeals, the decree was affirmed, 2 Cir., 94 F.2d 1023.

The Special Master rendered his report dated September 6, 1939, together with a petition for an allowance and disbursements. Both the plaintiff and the defendant, Santly, have filed exceptions to the report and each side seeks a modification thereof.

The account filed with the Master by Santly for the accounting period (January 1, 1932, up to and including February 28, 1933) showed a net loss. The plaintiff, objecting to Santly's account, urged upon the Master that if the account were properly stated, it would show a profit made during the accounting period of about $20,000. The Master rejected both contentions and reported that the Santly account should be restated to show a profit of $6,763.50, resulting from the infringement and the sum of $779.65 as profits against the defendant, Petkere.

The first question to be considered is whether the Master's treatment of overhead expense is correct. That this is the main issue is recognized by both sides. The Master apportioned a part of the overhead on the unit basis (or 2.13%) based on the finding of fact that Santly had actively distributed at least 47 songs during the infringement period, and apportioned the remainder of the overhead on the gross sales basis (13.62%).

With respect to this apportionment, each side urges respectively the following: The defendant, Santly, contends that the Master should have used the gross sales ratio as the sole ratio of apportionment, or in the alternative, if the Master's use of the unit ratio was correct, it should have been applied to four and not forty-seven of the songs distributed and exploited by the defendant during the infringing period.

The plaintiff takes the view that the Master erred in the partial use of the gross sales ratio in that no deduction for general overhead should have been made under the circumstances of this action. But, if some deduction should be made, then the sole proper ratio was the unit ratio of apportionment.

The defendant has cited in support of its gross sales apportionment theory a number of well-recognized authorities. However, it is pointed out by the plaintiff that there are no settled rules of apportionment. In my opinion, it is the court's duty to fit the formula to the case in order to reach an equitable result. It is due to the practical impossibility of precise allocation of overhead that has led the courts to adopt the use of many different formulae. This is typically demonstrated in the case of Levin Bros. v. Davis Mfg. Co., 8 Cir., 72 F. 2d 163. I quote from the opinion of the court (page 165 of 72 F.2d): "Because a recurring item, like overhead, is handled a certain way in a given case such is no statement of a rule of law that the same item must be similarly dealt with in all cases. The 'rules' contended for by the parties here are not rules of law. They are but illustrations of applications of the above single broad rule to different fact situations".

In the recent case of Sheldon v. Metro-Goldwyn Pictures, 106 F.2d 45, the Circuit Court of Appeals for this Circuit has approved the Levin case with respect to the treatment of overhead.

After considering those authorities, as well as the others cited by the contending parties, I am rejecting the defendants' gross sales ratio theory as the sole ratio of apportionment. The reasons upon which my ruling is predicated are the following:

1. There is no invariable rule of apportionment of overhead.

2. The infringing song, "Starlight" standing by itself, was a success, having

sold 62,000 copies and has brought in as a result of such sales $15,866.42. To accept the defendant's theory would result in a loss sufficiently large to absorb all the profits. In other words, the defendant is seeking to charge the income from the infringement with the general business losses of the defendant. I believe that it is well-settled that indirect financial benefit to the infringer should be prevented. By this I do not mean to convey the thought that invariably must the victorious party in an infringement suit recover from the infringer on an accounting. Certain cases cited have shown this to be otherwise. Such as Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257, certiorari denied 262 U.S. 752, 43 S. Ct. 700, 67 L.Ed. 1215, where the infringing and non-infringing activities formed two clearly divided types of business and each contributed equally to the income of the defendant, and in Union Electric Welding Co. v. Curry, 6 Cir., 279 F. 465, certiorari denied 260 U.S. 727, 43 S.Ct. 89, 67 L.Ed. 484, where virtually the entire business of the defendant was intended for the infringing activity and only a minor proportion utilized for other purposes. But the situation at bar differs materially.

The alternative theory urged by the defendant must also be rejected. The Master found as a fact from the testimony and exhibits that 47 songs were distributed by the defendant during the infringing period. The evidence supports this conclusion and I will accept his finding of fact on this point.

We now come to plaintiff's objection to the Master's use of both the gross sales basis in part and the unit basis in part.

First, I reject the plaintiff's claim that no deduction for general overhead should have been made in view of the circumstances of this action. The alternative offered by plaintiff is that if there is a deduction for general overhead, the sole proper ratio is the unit ratio of apportionment. In support thereof, it is claimed that there is no overhead burden caused by the infringement, and further, that even if the infringement did increase the general overhead, the defendant did not sustain the burden of showing the extra general costs of publishing and selling the infringing song. (The general overhead costs were constant; the number of employees remained substantially constant.) The plaintiff's argument summed up appears to be that the sole cost of the infringement were its direct costs; that the only fair appor-

tionment in this circumstance is to apportion the burden equally among the songs; that the Master improperly segregated the expenses and should have apportioned the entire general overhead.

The Master apparently applied the rule laid down in the Levin case, supra, that "overhead" which does not assist in the production of the infringement should not be credited to the infringer; that which does should be; it is a question of fact in all cases. He found that overhead expenses were increased by the addition of the infringing song to Santly's Catalogue in the sum of $25,955.12. The plaintiff objected to this item on the ground that the defendant was obliged to segregate such portion of the expenses as applied directly to the infringing song. The Master overruled this objection, holding that Santly was not a wilful infringer (the facts support this conclusion), and that it was contrary to trade practice to segregate the "Starlight" portion of the expenses. I, too, agree with this view. The cases dealing with segregation of expenses cited by plaintiff deal with wilful infringers in patent suits. The Master then considered the balance of overhead expenses and held that even though the overhead was not increased by the addition of "Starlight" to Santly's Catalogue, he was unable to find that the expenditure of the increased portion of the overhead did not "assist" in the publication and distribution of "Starlight".

I am constrained to hold that under the Levin and Sheldon cases, the Master's finding that "Santly is entitled to some proper credit for the overhead expenses which were not increased as well as for those which were increased by the publication and distribution of "Starlight" (report, pps. 11 and 12)", was justified under the circumstances in this case.

It now becomes necessary to consider specific items which make up the general overhead. Some of the items were accepted and others eliminated by the Master. The plaintiff submits that the Master erred in his computation of (1) income from "ASCAP" (American Society of Composers and Publishers); (2) income from foreign royalties, and (3) royalties paid to Young. Without going into detail, I have reached the conclusion that the Master's computations were correct and accordingly will not be disturbed.

The defendant submits that the Master erred in rejecting three specific items

of general overhead, namely, (1) expenses for arrangements; (2) costs of signs and (3) the elimination of Joseph Santly settlement fee of $6,753.48, noted in the books as "salary". As to the first two items, the Master's ruling is approved. Item 3 presents a situation which requires some discussion. The Master held that the payment to Joseph Santly individually in April or May, 1932, of $6,753.48 in settlement of the company's obligations to him under his salary contract when he left its employ at that time was not an ordinary and necessary expense of a publishing business; that is was not made for services rendered or needed but for a special purpose and under extraordinary conditions. He accordingly disallowed the credit. From the testimony, it appears that the payment to Santly was the consideration for the cancellation of ten-year contract which otherwise was a valid and subsisting agreement. While it is true that the payment covered only two months of the accounting period, I think that the defendant is entitled to the credit. In the Sheldon case, 106 F.2d, page 53, two of the star performers were rendering no services prior to the making of the infringing picture. Yet, the "idle" time of these two performers was allowed as a credit in the overhead as a matter of sound business practice. At bar, the credit which I am allowing is in my opinion equally sound as a business practice. The Master is overruled on this item and the credit charged to overhead is allowed.

The defendant, Petkere's account together with a stipulation of facts filed with the Master show that she received royalties from the infringing song amounting to $779.65. The Master credited Santly with that amount but disallowed an item of $320.93 for counsel fee allegedly advanced in connection with the defense of Petkere in this suit. From the testimony I fail to find any authorization for the payment of such fee and will accordingly sustain the Master on this finding. The defendant, Petkere, is charged with profits of $779.65.

The Special Master has filed a petition requesting an allowance of $1,825 together with the sum of $17.18 disbursements. After considering the time spent by the Master, as well as the nature and extent of his report, I find that the sum of $1,000 is fair and reasonable and his allowance is fixed at that sum, together with the sum of $17.18 as disbursements.

The defendant, Santly, is to be charged with the costs of the accounting. Plaintiff's application for interest is disallowed.

Submit decree on notice in accordance with the foregoing.