## STARR PIANO CO. v. AUTO PNEUMATIC ACTION CO.

## AUTO PNEUMATIC ACTION CO. v. STARR PIANO CO.

(Circuit Court of Appeals, Seventh Circuit. March 10, 1926.)

Nos. 3595, 3597.

**1. Patents ⊕➾328—766,601 for mechanical piano, held valid.**

The Danquard patent, No. 766,601, for a manually or mechanically operative piano, *held* valid.

**2. Patents ⊕➾318(5).**

Interest on profits recovered from an infringer *held* properly allowed from the date of expiration of the patent.

**3. Patents ⊕➾289—Question of laches in bringing suit for infringement is one of diligence under the circumstances.**

The question of complainant's laches in bringing suit for infringement depends upon whether under all the circumstances it is chargeable with lack of due diligence.

**4. Patents ⊕➾318(6)—Infringer held not entitled to credit for loss, as against profits of other years.**

Where, at the end of the calendar year during which infringement ceased, defendant's books showed a loss, it was not error for the master to exclude that year from the accounting for profits without giving defendant credit for the loss as against profits of prior years.

**5. Patents ⊕➾318(6)—Method of determining manufacturing cost to infringer approved.**

Ascertainment of manufacturing cost to infringer when its books did not disclose the facts by taking average unit cost as shown by inventories, and apportioning, and including part of overhead of whole undertaking, *held* proper.

**6. Patents ⊕➾318(5)—Interest on infringer's invested capital properly allowable on accounting.**

On accounting for profits of infringement, interest on the infringer's invested capital is properly allowable, and allowance of interest at 6 per cent. was not error.

Appeals from the District Court of the United States for the District of Indiana.

Suit by the Auto Pneumatic Action Company against the Starr Piano Company. Appeal and cross-appeal from final decree. Affirmed.

Drury W. Cooper, of New York City, for appellant.

Louis W. Southgate, of New York City, for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Appellant in No. 3597, here called plaintiff, sued appellee in No. 3597, here called defendant, charging infringement of expired patent No. 766,601, issued August 2, 1904, for a manually or mechanically operated piano. No. 3595 is a cross-appeal.

The District Court sustained the patent, and found infringement of claims 26, 27, and 31, and, on an accounting, entered a decree in favor of plaintiff for $81,753.46, profits, and interest thereon at 6 per cent. from August 2, 1921, the expiration date of the patent.

The claims are as follows:

"26. A manually and mechanically operative piano having grouped above the keyboard and in front of the piano action the following devices: A wind chest, pneumatics operatively connected to said chest, a tracker and music sheet rolls, air conduits connecting the tracker and pneumatics; abstracts, and pivoted vertically swinging strikers operating the piano action and actuated by the abstracts and arranged above the level of the pneumatics; said grouped devices being adapted for removal together from the instrument case.

"27. A manually and mechanically operative piano having grouped above the keyboard and in front of the piano action the following devices: A wind chest, pneumatics operatively connected to said chest, a tracker and music sheet rolls, air conduits connecting the tracker and pneumatics, abstracts operated by the pneumatics, pivoted vertically swinging strikers operating the piano action and actuated by the abstracts and arranged above the level of the pneumatics, and adjustable stops regulating movement of the action by the pneumatics and strikers."

"31. In a mechanical musical instrument, the combination with the action wippens 4, of a tracker 15, rolls 14, 16 adapted to carry a music sheet over the tracker, pneumatics 24, air conduits and valves connecting the tracker and pneumatics, upwardly extending abstracts 25 coupled to movable walls of the pneumatics, and pivoted strikers arranged above said pneumatics and adapted to be swung vertically by the abstracts against the wippens 4 for operating the piano action; all of said parts being arranged above the keyboard and in front of the piano action."

[1] We see no reason for, and would not be justified in, reaching a conclusion on the patent different from that reached in sustaining the patent by the Circuit Court of Appeals for the Second Circuit in two well-considered cases. Auto Pneumatic Action Co. v. Kindler & Collins, 247 F. 323, 159 C. C. A. 417; Auto Pneumatic Action Co. v. Otto Higel Co., 260 F. 950, 171 C. C. A. 592.

At the outset, plaintiff insists that it should have in this case all of the profits made by the defendant by reason of the manufacture and sale of infringing player pianos during the accounting period, and that the master erred in holding that the claims cover only the units comprising parts numbered 14 to 26, both inclusive, in figure 1 of the patent, and in limiting plaintiff's right of recovery to defendant's gains and profits derived from the making and selling of such units in mechanical player pianos. Plaintiff contends that the holding of the Circuit Court of Appeals of the Second Circuit in the Higel Case, supra, gives a much broader construction to the claims than that given by the master. After a careful reading of the Higel Case, we are of opinion that the interpretation of the master was not error, and in that connection his method of arriving at profits is not open to objection.

[2] *Interest.*—The master's report was filed June 23, 1924, but interest was allowed from August 2, 1921. By the defendant it is contended that it was error to allow interest until after the filing of the report. By the plaintiff it is contended that interest should have been allowed from a much earlier date. There has been much controversy and considerable diversity of opinion upon the question of the allowance of interest on profits recovered in infringement cases. In the earlier cases, the Supreme Court of the United States proceeded upon the theory that profits were unliquidated damages and that interest was not allowable thereon. This court has held that the infringer is properly chargeable with interest from the end of the infringing period. Goodrich v. Consolidat-

ed Rubber Tire Co., 251 F. 617, 624, 163 C. C. A. 611, Malleable Iron Range Co. v. Lee (C. C. A.) 263 F. 896, 902. In Miller v. Robertson, 266 U. S. 243, 258, 45 S. Ct. 73, 78 (69 L. Ed. 265), after a review of many cases, the court held:

"When necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages."[1]

*Sufficiency of Proof.*—The defendant, relying upon Westinghouse Co. v. Wagner Co. 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and Dowagiac Mfg. Co. v. Minn. Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, urges that the plaintiff has not met the burden of proving profits as between the infringing and noninfringing elements of defendant's product. This court, in Standard Scale & Supply Co. v. Cropp, 6 F.(2d) 447, 454, reviewed those cases and reached the conclusion with which the finding of the master and the court, in connection therewith, are in perfect harmony; and they are also in harmony with Computing Scale Co. v. Toledo Scale Co., 279 F. 648, decided earlier by this court. In the main, the evidence in this case was from witnesses personally appearing before the master, and the master's findings were accepted by the court. Upon an examination of the record, we find nothing that would justify us in making any further inquiry except to determine whether the master and the court, on the various questions, correctly applied the law.

[3] *Laches.*—Defendant urges laches as a bar to recovery. Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 S. Ct. 258, 40 L. Ed.

[1] Cases referring to interest on recoveries in infringement cases: Silsby v. Foote, 20 How. (63 U. S.) 378, 386, 15 L. Ed. 593; Mowry v. Whitney, 14 Wall. (81 U. S.) 620, 653, 20 L. Ed. 860; Littlefield v. Perry, 21 Wall. (88 U. S.) 205, 229, 22 L. Ed. 577; Parks v. Booth, 102 U. S. 96; 106, 26 L. Ed. 54; Ill. C. R. Co. v. Turrill, 110 U. S. 301, 303, 4 S. Ct. 5, 28 L. Ed. 154; Tilghman v. Proctor, 125 U. S. 136, 160, 8 S. Ct. 894, 31 L. Ed. 664; Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 457, 12 S. Ct. 49, 35 L. Ed. 809; Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 804, 19 L. Ed. 566; Nat. Folding Box Co. v. Dayton Paper Co. (C. C.) 97 F. 331, 332; Oehring v. Fox Typewriter Co., 251 F. 584, 163 C. C. A. 578; Superior Mach. Tool Co. v. Cincinnati Lathe & Tool Co. (C. C. A.) 284 F. 267, 269; Dowagiac Mfg. Co. v. Deere & Webber Co. (C. C. A.) 284 F. 331, 351; K. W. Ignition Co. v. Temco Elec. Motor Co. (C. C. A.) 283 F. 873, 880; Merrell Soule v. Powdered Milk Co. (C. C. A.) 7 F.(2d) 297, 300; Consolidated Rubber Co. v. Diamond Rubber Co., 226 F. 455, 463.

383, and McIntire v. Pryor, 173 U. S. 38, 59, 19 S. Ct. 352, 43 L. Ed. 606, show that the question of laches depends upon whether under all the circumstances, plaintiff is chargeable with lack of due diligence. Though the patent in question was issued in 1904 and suit was not commenced against defendant until 1919, it appears that plaintiff at all times complied with the statute and properly marked its product and thereby gave notice to the public. Even after suits commenced in 1915 had been prosecuted to a successful conclusion and notice thereof promptly given to the defendant, defendant announced that it did not believe that the patents could be sustained outside of New York. There is the claim by defendant that the fact of its infringement was known to the plaintiff through one Lecato, who was an officer of a concern controlled by or in which the plaintiff was interested. The court limited the period of accounting to five years instead of six, and, upon the whole record, there do not seem to be any equities favorable to defendant or anything that calls for any different application of the rule as to laches from that applied by the court and the master.

*Trade-ins.*—In the course of the conduct of the sales end of defendant's business, they found it desirable to take in trade, at a fixed price, old pianos and other musical instruments, which are called "trade-ins." The master allowed the contract value thereof. Defendant complains that that was error. The evidence showed that, instead of being a loss, there was, upon an examination of one-third of the transactions, an actual profit. It was purely a question of fact, to be determined by the court.

*Repossessions.*—Defendant's business was done upon the installment plan. Five per cent. or more was paid in cash, deferred payments extending over one, two and three years. There were many defaults, so a considerable number of contracts were canceled and the property repossessed by the defendant. The property was put back into stock and subsequently, where necessary, conditioned and resold, and possibly some of it was resold a number of times. In the accounting taken by the master, the outstanding accounts were credited to the unpaid sale price of the property returned, and the merchandise or stock was charged with its cost. Plaintiff's complaint is that, in arriving at the profit on an article, involving infringement, the master took the difference between the cost, and the price received and that in the cost he included labor,

material, and overhead, but that, when the articles were repossessed they were entered on the books at merely the labor and material cost, excluding the overhead, whereby the plaintiff claims that profits were found to be in an amount $117,553.60 less than they rightfully should have been. Defendant's complaint is twofold. It is that, while the master allowed it for repossessions during the accounting period ending August 2, 1921, he refused to allow it for repossessions between August 2, 1921, and October, 1923, which it claims were clearly and fully shown in the record, and also refused to allow it for repossessions which defendant claims experience showed would occur after October 31, 1923.

The question of repossessions presented before the master many complications and difficulties. What conclusions we might reach if either one of the propositions embraced in the several complaints had been presented to us freed from those difficulties and complications seems immaterial, because, after a thorough canvass of the whole situation, including the relations between the parties, their attitude upon the question of charge-backs for repossession during the hearing the master found that the evidence did not show that there was any probability of loss to the defendant, and we conclude that the finding comes as near being just and fair as any determination could be under the circumstances.

[4] *Loss and Gain Periods.*—Defendant's books were closed annually, with the calendar year. That part of the year 1921 within the accounting period showed a loss, and the master excluded that year. Defendant contends that that loss should have been deducted from the profits of the whole accounting period. We see no reason in this case to depart from the rule recognized in Union Welding Co. v. Curry (C. C. A.) 279 F. 467. There is nothing unfair in requiring the trustee to account for profits made by him in the use of the trust estate, nor in requiring him to himself sustain the losses incurred in other and separate transactions.

[5] *Manufacturing Costs.*—Plaintiff complains of the master's method of spreading the overhead on the basis as it charges, of the ratio of player piano gross sales to total gross sales. Defendant complains that, in arriving at labor and material costs, the master deliberately abandoned accurate costs arrived at by its expert accountants from the facts shown upon its books, and, instead, thereof, accepted a theory and plan set up by plaintiff's expert, not based upon the actual facts.

We are of opinion that the master was not guilty of error on either charge. For the years 1920 and 1921 defendant had cost records; prior to that time none were kept. After analyzing the method pursued by the defendant, the master reached the conclusion that defendant's method of arriving at costs and profits for the years 1916, 1917, 1918, and 1919 was unsound, and that "the best that can be done under the circumstances from the defendant's books is to make an approximation using the inventories for all of the years except 1920 and 1921, as the nearest approximation to cost. Taking the average unit cost as revealed by the inventories, and extending these unit costs upon the number of units manufactured in each year, we get the nearest approximation to direct labor and material cost of the production of player-pianos in the respective years 1916–1919 inclusive, and for the year 1920 taking the actual costs as set up by the defendant from actual cost studies in that year."

The problem presented to the master, by reason of the bookkeeping methods of the defendant, was a most difficult one, and the master seems to have been at great pains to arrive at the right conclusion, and, in doing so, displayed great skill and expertness. Plaintiff's notion that "the master apportioned or spread this manufacturing overhead on the basis of the ratio of player piano *gross sales* to total gross sales is incorrect. What the master did was, "for the purpose of arriving at factory overhead, selling and general expense, and interest on capital invested the ratio of gross sales of player-pianos to gross sales of all products in each year of the infringing period, has been ascertained, and, on the ratio so ascertained, factory overhead, selling and general expense, and interest on capital invested, have been apportioned to player pianos manufactured in each year of the infringing period."

It is quite apparent that, where there is a general sales organization, maintained in connection with and as a part of the manufacturing business, a part of the overhead of the whole undertaking must be chargeable to sales and a part to manufacturing. We find no error in the methods used or conclusions reached by the master on this point. [6] *Interest on Invested Capital.*—Plaintiff urges that it was error to allow interest upon defendant's invested capital. It was

allowed by this court in Computing Scale Co. v. Toledo Scale Co., 279 F. 648, and that it would be so allowed was strongly intimated in Seabury v. Am Ende, 152 U. S. 561, 14 S. Ct. 683, 38 L. Ed. 553. That it should be so allowed in any attempt to arrive at profits seems too clear for discussion. Plaintiff urges that 6 per cent. was too high a rate to be charged is without merit.

The decree is affirmed; each party to pay one-half the costs of this appeal.