NATIONAL CARBON CO., Inc., v. RICH-ARDS & CO., Inc., et al.

No. 327.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1936.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess, of New York City, of counsel), for appellants.

Watson, Bristol, Johnson & Leavenworth, of New York City (L. A. Watson, C. V. Johnson, and C. P. Bauer, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The patents in suit relate to improvements in adsorptive carbon and the process of making the same. The defendants are not charged with infringement of the patented process, but with infringement of certain product claims by the use of infringing carbon in their business. One of the defendants, the Zapon Company, has succeeded to the assets and liabilities of the other, Richards & Co. Inc., and they have successively owned and operated a plant in Stamford, Conn., for the manufacture of pyroxylin coated fabrics and lacquers. In the process of coating fabrics valuable solvents are used and one of the problems of the business is to recover such solvents as are evaporated in drying the coated fabrics so that they may be used again. To this end the defendants at first operated a recovery plant which employed no carbon and which for convenience will be referred to as the condensation and creosote system. On June 1, 1930, after this recovery plant had become somewhat inefficient, the defendants installed a new system by which the mixture of solvent vapor and air in the coating machine was, after cooling, passed through a carbon adsorber until the carbon became saturated with the absorbed solvent. The adsorber was then blown out with steam and the mixture passed through a condenser, a separator, and a rectifying still, thereby recovering the solvents in a form ready for re-use. Three carbon adsorbers, arranged so that the recovery process might be continuous, were utilized. The carbon so used by the defendants from June 1, 1930, to June 30, 1934, is the basis for the charge of infringement in the present suit.

At the trial the defendants' counsel stated that no defense was to be made as to validity or infringement of the claims in suit, and they offered no evidence in support of the denials of validity and infringement contained in their answer. They now maintain, though apparently no such contention was made below, that the bill should have been dismissed because the plaintiff failed to carry its burden of proving infringement. The point has no merit. It was proved that the defendants, with knowledge that they would be charged with infringement, purchased from the Barnebey-Cheney Engineering Company carbon that was known as "60 Minute Adsorbite." Though in part hearsay, this evidence was admitted prior to objection and no motion was made to strike it out. Dr. Ray testified that he had tested 60 Minute Adsorbite of the Barnebey Company and found it to infringe the claims in suit. Furthermore, Dr. Ray gave his opinion as an expert, based on Mr. Creighton's description of the defendants' cycles of operation and efficiency of recovery, that any carbon so operating infringed the claims. His testimony was not even subjected to cross-ex-

amination. On this record the plaintiff made out a prima facie case of infringement.

■ On the accounting the plaintiff secured an award of $24,410.65 representing profits for which the defendants must account. They contend that the recovery should have been only nominal because the plaintiff failed to make an apportionment of the profits derived by the defendants from their solvents recovery equipment so as to show what part was due to use of the infringing carbon and what to the rest of the equipment. Concededly the case falls within rule (d) of the principles laid down in Westinghouse Electric, etc., Co. v. Wagner Mfg. Co., 225 U.S. 604, 614, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.(N.S.) 653. That rule requires the plaintiff, where both the patented invention and other factors have contributed to the profits, to apportion the profits, or else to prove that he is entitled to the entire fund, which he may do by showing either that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature" (225 U.S. 604, at page 614, 32 S.Ct. 691, 694), or that the defendant has "inextricably commingled and confused the parts composing" the fund (225 U.S. 604, at page 618, 32 S.Ct. 691, 696). The trial judge held that apportionment was impossible and that the plaintiff was entitled to the entire profits, but he nevertheless reduced them by the amount of profits which the defendants would have realized had they continued to use the superseded condensation and creosote system, renovated so as to restore its 1927 efficiency, which the parties seemed to agree would be a fair standard of comparison. The profits from solvent recovery with the carbon system were found to be $38,353.36 and the profits attainable had the renovated condensation and creosote system been used were found to be $13,942.71. The plaintiff's award was the difference between these sums. The result of thus reducing the actual profits by such application of the standard of comparison, which was the best non-infringing alternative, was equivalent to an apportionment of the profits so as to show the part attributable to the use of carbon. Both systems were essentially the same in functional processes, although the old system used condensation coils and adsorbent creosote of oil to catch and hold the volatile solvent vapors while the infringing system used adsorbent carbon, and this

necessitated differences in mechanical appurtenances; but each system produced only the result of recovering solvents. Hence the operation of the old system as a whole is a fair standard of comparison for determining the advantage gained by operation of the new system as a whole. Cf. Cambria Iron Co. v. Carnegie Steel Co., 224 F. 947, 954 (C.C.A.3); Morgan Const. Co. v. Forter-Miller Engineering Co., 234 F. 324 (C.C.A.3). Accordingly, we hold that the appellants' attack on the accounting can be sustained only by establishing error in the figures.

■ Complaint is made that a loss of some $12,000 in the year 1932 was excluded from the computation. This is correct. The loss in one year had no relation to profit or loss in another. Each hour of use of the carbon was a separate infringement. If the figures permitted it, the plaintiff could pick out only the profitable hours as the infringements for which he sued. See Walker, Patents, (6th Ed.) § 754; Klocster, Patent Accountings, 257. Since the books are on the yearly basis, it is feasible and fair to take the years as independent infringements. Merrell Soule Co. v. Powdered Milk Co., 7 F.(2d) 297 (C.C.A.2), upon which the appellants rely, does not support their contention and was properly distinguished by the trial judge.

Excluding the year 1932, the defendants' infringing operations covered a period of 37 months. The account as stated in the opinion below is as follows:

| | |
|---|---|
| "Credit, | $179,510.94 |
| 560,774 gals. solvent recovered, @ $.3196 per gal. | |
| (These figures, taken from defendants' books, are not disputed.) | |
| Debit, | |
| Cost of operations before fixed charges. (This figure likewise not disputed) | $47,007.35 |
| Depreciation at 10% on fixed charges of $173,205, applicable to solvent recovery, | 53,404.88 |
| Pro rata taxes and insurance, | 8,702.42 |
| Interest at 6% on $173,205 | 32,042.93 |
| Total Debits | $141,157.58 |
| Savings to defendants from solvent recovery | $ 38,353.36" |

■ The only dispute as to these figures relates to the defendants' investment in the carbon recovery plant. This was taken at $173,205. It excluded an item of some $50,000 spent in rebuilding the coating machines, and the appellants argue that $40,557 thereof was improperly excluded. Mr.

Creighton testified that the $50,000 expenditure increased the efficiency of the coating machines and "that the better operation came close to justifying the expenditure irrespective of solvent recovery." We think the evidence justifies the District Court's finding that the expenditure was no part of the process of solvent recovery.

Most of the appellants' attack upon figures relates to those shown in the schedule of savings attainable by the comparative system. That schedule was stated as follows:

| "Credit | | | |
|---|---|---|---|
| 386,007 gals. recovered @ $.3196 (Not disputed) | | | $123,564.70 |
| Debit, | | | |
| Item A: Cost of operations before fixed charges, 386,007 gals. @ $.1119, | | $43,194.18 | |
| Depreciation at 10% on comparison system, investment of $104,205 (Not disputed) | | 32,129.88 | |
| Item B: Depreciation at 10% on still investment, $18.000 | | 5,550.00 | |
| Item C: Pro rata taxes and insurance | | 6,140.00 | |
| Interest @ 6% on total investment, including still, aggregating $122,205 | | 22,607.93 | 109,621.99 |
| | | | |
| Savings attainable by Comparative System | | | $ 13,942.71" |

Two of the points now made by the appellants have to do with the amount of gallonage of solvent recovery (386,007 gals.), and the amount of investment for depreciation ($104,205), but each of these items is stated in the opinion to have been "not disputed." These points, not raised below, cannot properly be taken on appeal. United States v. Leerburger, 160 F. 651, 652 (C.C.A.2); Baker v. Kaiser, 126 F. 317, 319 (C.C.A.8); Horne v. George H. Hammond Co., 71 F. 314, 316 (C.C.A.1). We have, however, gone into the record sufficiently to satisfy oiurselves that no error was committed.

Objection is made to the item of $5,500 for depreciation on still investment. This was thoroughly discussed in the opinion below and nothing need be added here.

The appellants contend that the cost per gallon of recovering solvent by the comparison plant was incorrectly taken as 11.19 cents instead of 10.87 cents. The argument is that the figure of 11.19 cents includes a fixed charge of .32 cents for depreciation of the still house, and that by failing to deduct this from the cost of operation, while using $18,000 as the value of the still house for purposes of depreciation, a double fixed charge of .32 cents was imposed. The figure 11.19 cents first appeared in the Defendants' Exhibit B as "Cost of operation excluding fixed charges (depreciation, insurance and taxes)." Later an effort was made to show that at least .32 cents per gallon was an allowance "applicable for fixed charges for the rectification end." Judge Hincks considered the matter very carefully and did not credit the explanation. No adequate reason has been advanced for upsetting this item.

Finally, it is urged that the patented Thompson machine should have been used as a proper standard of comparison. This machine was not available on the market until 1933, and the first sale by Thompson's licensee was in March, 1934. For this and other reasons stated below, it was proper to reject it as a standard of comparison.

Decree affirmed.