## COCA–COLA CO. v. DIXI–COLA LABORATORIES, Inc., et al.

### Civ. 198.

District Court, D. Maryland.

Oct. 4, 1944.

Brown & Brune, Hilary W. Gans and Charles Ruzicka, all of Baltimore, Md., Spalding, Sibley, Troutman & Brock, of Atlanta, Ga., and Nims & Verdi, of New York City, for plaintiff.

J. S. Mead, of Birmingham Ala., and W. Hamilton Whiteford, of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This case is before the Court on exceptions which have been filed by both the plaintiff and the various defendants to the Special Master's report.

The questions involved in the reference to the Special Master requiring determination by him, and upon which he has now ruled in a very comprehensive report, marked by its clarity and care in preparation, consisting of sixty-seven pages, may be consolidated and briefly summarized as follows:

I. What profits, if any, is plaintiff entitled to recover from defendants by reason of sale of defendants' various products either directly to the retailer, including fountain dispensers, taverns and bars, or through distributors or bottlers, in substitution of plaintiff's product at defendants' own instance, or without defendants having first obtained reasonable assurance that their products would not be so used?

II. What counsel fee, if any, should plaintiff be allowed as an item of compensatory damages?

III. What exemplary or punitive damages, if any, should plaintiff be awarded?

I. Taking up these questions in the order in which they are above stated, we conclude that the Special Master's finding that the plaintiff is entitled to profits earned by the defendants during the years specified in his report on sales of Marbert Cola, Lola Kola, Apola Cola, and from use of the name "Kola", but not other profits, is correct. This Court, as a result of the trial of the case on the merits—see 31 F.Supp. 835—found that, in numerous respects, which need not be recited here, the defendants had resorted to unfair competition with respect to plaintiff's product and the Court of Appeals affirmed this finding. See 117 F.2d 352. Accordingly, it became the duty of the Special Master to determine the precise character and extent of such competition. We concur in the Special Master's findings in these respects; and also in his findings with respect to what items of cost are properly deductible in determining defendants' profits derived from their wrongdoing.

As to the total amount, however, of profits to which plaintiff is entitled, we believe, as plaintiff contends, that the Special Master is in error due to the method of computation which he has followed. That is to say, plaintiff contends that it is entitled to recover profits with respect to each product for the profitable years without deducting from such profits the losses incurred in unprofitable years; in other words, that since the defendants kept their books on a calendar year basis, as respects each product, each year should be treated separately and only the losses during a particular year should be offset against profits of that year.

The Special Master, however, while admitting the soundness of this contention as a general rule, held that while the particular business done with respect to each of the different products should be treated as separate and distinct from that of the others, the sales of each product in the various years could not properly be considered as independent transactions and, therefore, he treated the matter of all profits and losses with respect to each product throughout the various years as an entirety. He said, for example, with respect to Marbert Cola (Report, pages 17–18): "The only year in which the sales to fountain trade were unprofitable was 1937, in which year defendants began to market their product. The sales in this year were necessary preliminary steps without which the profitable sales in subsequent years could not have been effected. The defendants in 1937 were endeavoring to build up their business and put their product on the market. The subsequent profitable sales were the result of these initial efforts, and consequently the defendants should be required to account for only the net profits resulting from both the final and the preliminary sales. Restatement of the Law of Torts, Sec. 747, Comment (d)."

Plaintiff's position appears to be supported by the weight of authority, and we do not feel that the reason given by the Special Master is sufficient to justify departure from the usual method of computing the profits in cases of this kind. See Starr Piano Co. v. Auto Pneumatic Action Co., 7 Cir., 12 F.2d 586; National Carbon Co. v. Richards & Co., 2 Cir., 85 F.2d 490. See also Duplate Corp. v. Triplex Co., 298 U.S. 448, 453, 56 S.Ct. 792, 80 L.Ed. 1274. The section in the Restatement of the Law of Torts upon which the Special Master relies, and related sections, should not be construed, we believe, as contrary to the well established rule.

It follows from the aforegoing that instead of an allowance to the plaintiff which,

the Special Master recommends of all profits from sales in the amount of $2,-302.03, the plaintiff should be allowed the profits separately for each year where found to have existed, which appear from the Special Master's report, pages 17 and 21, to have been as follows:

|      | Fountain Trade | Distributors |
|------|----------------|--------------|
| 1938 | $1239.85       |              |
| 1939 | 1703.16        |              |
| 1940 | 131.70         | 4.21         |
|      | $3074.71       | 4.21         |

|      | Lola Kola | Apola Cola |
|------|-----------|------------|
| 1938 |           | $159.73    |
| 1939 |           | 301.99     |
| 1940 | 4.74      | 148.83     |
| 1941 |           | 13.94      |
|      | $4.74     | 624.49     |

Thus, the total amount of profits from the above named sources allowable to plaintiff is $3,708.15 instead of $2,302.03, as fixed by the Special Master.

In addition to the profits just referred to, the Special Master made an allowance to the plaintiff for profits in the amount of $250 from the use of the name "Kola", and as the result of sales to seven bottling companies, in the amount of $617.92. However, as appears from the Special Master's Report, the correctness of the amount of the first of these items is not contested, and as respects the second item, the profits which it represents were computed only on profit and loss figures for 1943, complete data with respect to other years being unavailable. Accordingly, there would appear to be no reason to change these items.

II. With respect to the second question, namely, whether plaintiff is entitled to allowance of a counsel fee, we agree with the Special Master that there is no provision in the Federal statutes that either expressly or by implication warrants such allowance; also, that while this Court, in certain equity proceedings of this kind, has the power to allow a counsel fee, such should be exercised only in exceptional cases and for dominating reasons of justice, which, we believe, are nonexistent here. We further agree with the Special Master's conclusion that in Maryland the general rule is that costs and expenses of litigation, other than actual court costs, are not recoverable in an action for damages.

However, plaintiff and also the Special Master take the position that since the Federal trade mark statutes, upon which plaintiff relies in part, are silent on the subject of counsel fees, and since plaintiff's suit is also grounded in part on the law of unfair competition as it exists in Maryland, plaintiff may invoke any applicable Maryland statutory provision allowing counsel fees. Hence, plaintiff has invoked Section 57 of Article 27 of the Code of Maryland, Edition of 1939, which is as follows: "Every such person, association or union adopting a label, trade-mark or form of advertisement as aforesaid may proceed by suit to enjoin the manufacture, use, display or sale of any such counterfeit or imitation, and all courts having jurisdiction thereof shall grant injunctions to restrain such manufacture, use, display or sale, and shall award the complainant in such suit such damage resulting from such wrongful manufacture, use, display or sale as may by said court be deemed just and reasonable, according to the evidence in the case, and shall require the defendants to pay such persons, associations or unions the profits derived from such wrongful manufacture, use, display or sale, and in addition to court costs such reasonable attorney's fees as the court may allow; and said court shall also order that all such counterfeits or imitations in the possession or under the control of any defendant in such case be delivered to an officer of the court, or to the complainant, to be destroyed."

While recognizing that any allowance of counsel fees by virtue of the Maryland statute just quoted is entirely discretionary with the Court, the Special Master held—and to this defendants have excepted—that this law might properly be invoked in the present case, and, accordingly, has recommended an allowance to the plaintiff of a fee of $2,000, with respect to that part of the litigation relating to use by the defendants of the infringing marks "Apola Cola" and "Lola Kola".

Assuming that because of the scope of the present suit, failure of the Federal statutes to provide for allowance of counsel fees would not preclude their allowance under an applicable Maryland statute, we, nevertheless, disagree with the Special Master for the following reasons: First, it is extremely doubtful whether the statute, of which the above quoted section is a part, covers a case of this kind. It

was enacted in 1892 (Laws of Maryland, 1892, Chapter 357, Section 4). It is entitled "An Act to protect associations and unions of working men and persons in their labels, trademarks and forms of advertising and to punish offenders for a violation of the same." The statute has never been construed by any reported decision in Maryland or elsewhere, in so far as its scope or application to a situation such as that here presented is concerned, where the label or trademark is that of the owner or inventor of the product, as opposed to the label or trademark of those who are employees in the making of the product.

Without quoting the other sections of the Act, suffice it to summarize them by saying that Section 1 makes it a misdemeanor, punishable by specified fine or imprisonment or both for "any person or corporation to counterfeit or imitate" a label or trademark, or form of advertisement of working men, either as individuals or as members of trade unions. Section 2, likewise, makes it a misdemeanor, punishable by specified fine or imprisonment or both, for "every person, corporation or association" to "use any counterfeit or imitation of any label, trade-mark or form of advertisement" of "any such person, union or association", knowing the same to be counterfeit or imitation. Section 3 provides for the recordation of such labels, trademarks or forms of advertisement, the requirements for which have been complied with in the present case. Then follows Section 4 (Section 57 of Article 27 of the Maryland Code), with which we are here concerned, and there are two other sections, 5 and 6, which make it a misdemeanor, punishable by fine or imprisonment or both, for any "person" to make any authorized display of a label, trademark or form of advertisement, or to use, without authorization, the name or seal, in the sale of goods or otherwise, of "such person, union or association."

Second, the reason for this legislation appears to have been the great increase in intense competition which labor unions had been experiencing for some time prior to the year when the Maryland law was enacted, namely, 1892. The constant pressure through immigration of a great multitude of unskilled or poorly skilled laborers, representing low standards of life, and at the same time introducing race antagonisms, induced the trade unions in this country to seize upon all possible weapons of defense. The label became one of these weapons. For example, the cigar makers in San Francisco, as early as the 1870's, had to meet the competition of Chinese labor. Also, labels became of great influence with garment workers, hatters, printers and innumerable other types of workers, with the result that numerous States, besides Maryland, had, by the early '90's, adopted legislation virtually identical with the Maryland statute except that in many instances the provision for allowance of attorneys' fees is not included. See Bulletin of Department of Labor No. 15—March 1898. We have been referred to no decision giving to these other State statutes the broad interpretation which the Special Master has given to the Maryland statute.

Third, this Court would have no hesitancy in saying, in view of the reasons underlying the passage of this statute as just explained, that it has no application to a trademark case such as the present one, were it not for the fact that in both the title and text of the Act, the word "person" or "persons" is referred to as well as trade associations and unions. Thus, in the section with which we are here concerned, Section 4, it will be noted that the right there given to bring a civil action to enjoin the infringement of trademarks and to obtain damages for such infringement is accorded not merely to every association or union which has adopted a label, trademark or form of advertisement, but also to "every such person" who has done so. A closer analysis of the various sections discloses that corporations are included among those against whom protection from violation of the label, etc., is given, while those to or for whom the protection is given, both criminal and civil, are only every "person, association or union." So, this distinction in phraseology still leaves the statute rather ambiguous as to the scope of its provisions with which we are here concerned, if we are to give full force and effect to a literal interpretation of the words employed. In other words, the statute clearly affords some ground for saying that it is broad enough to include the present case. On the other hand, we feel it is the more reasonable to conclude to the contrary. Therefore, and especially since, in any event, the allowance of an attorney's fee under this statute is, by the ex-

press language, entirely discretionary with the Court, we prefer to give the defendants the benefit of the doubt. Accordingly, we feel constrained to disagree with the Special Master and to rule that plaintiff is not entitled to allowance by the Court of a counsel fee.

III. Coming finally to the question whether exemplary or punitive damages should be allowed plaintiff, we fully concur in the Special Master's conclusion that such damages cannot properly be allowed in the present case, either by virtue of the Federal trade mark laws or otherwise, because, as the Special Master found, apart from the question as to the power of this Court ever to allow damages of this character,—which we need not decide,—the plaintiff has not proven actual loss, upon which alone such damages can be predicated. We believe there was ample credible evidence to support the Special Master's finding that the plaintiff has not shown that even if it had made the corresponding sales which the defendants made, it would have made a profit on them; that its losses would have been reduced; that it, the plaintiff, reduced its prices for its product because of the defendants' conduct, or that it thereby suffered injury to its reputation in the marketing of its product. As the Special Master rightly decided, he was not permitted to speculate upon these things.

All of the numerous exceptions filed on behalf of both plaintiff and the defendants, for which any of the parties seriously contends, or which are believed to present any substantial point, relate to one or more of the questions which we have just considered. It would, therefore, seem unnecessary to take up any of the other exceptions.

Accordingly, all of the findings and recommendations of the Special Master are affirmed except in two respects, i.e., (1) the amount of profits due plaintiff; and (2) allowance of a counsel fee. As respects (1) the amount should be $4,576.07, instead of $3,169.95. We approve the Special Master's method of distributing liability for profits among the several defendants, and his manner of allowing interest.

The matter of court costs is not considered by the Special Master in his report because not referred to him. We feel, however, it is appropriate to include in this opinion a ruling with respect to the payment of costs to the effect that they must all be assessed against defendants, jointly and severally, without any distinction as to their individual liabilities for same.

Also, it seems appropriate at this time for the Court to rule upon the matter of compensation to be allowed the Special Master. He has filed a petition requesting that he be compensated in the sum of $2,500 for his services. The amount of work performed has been extensive and in many respects intricate. None of the defendants has objected to the sum requested. We believe that the Special Master has fully earned it. Accordingly, it will be allowed, as part of the court costs.

An order will be signed in conformity with this opinion.