ADOLPH GOTTSCHO, INC., A CORPORATION, PLAINTIFF-RESPONDENT, v. AMERICAN MARKING CORPORATION, A CORPORATION, DEFENDANT-APPELLANT.

Argued January 20, 22, 1958—Decided March 3, 1958.

230

*Messrs. Robert R. Daly* and *Ralph G. Mesce* argued the cause for the appellant.

*Mr. Jerome C. Eisenberg* argued the cause for the respondent (*Messrs. Eisenberg & Spicer,* attorneys; *Mr. Ralph Neibart,* on the brief).

The opinion of the court was delivered by

JACOBS, J. The defendant American Marking Corporation appealed and the plaintiff Adolph Gottscho, Inc. cross appealed from a judgment entered in the Chancery Division on March 8, 1957. We certified on our own motion. *R. R.* 1:10–1(*a*).

In 1951 the plaintiff Adolph Gottscho, Inc. instituted its action against its former employee Jackson and others, including the defendant American Marking Corporation; its complaint alleged that Jackson had in confidence learned the plaintiff's trade secrets while in its employ and that he and the others were improperly using them; and the relief it sought included an injunction and accounting. After a lengthy trial Judge Speakman found in the plaintiff's favor (35 *N. J. Super.* 333 (*Ch. Div.* 1954)), we affirmed (18 *N. J.* 467 (1955)) and the United States Supreme Court denied *certiorari* (350 *U. S.* 834, 76 *S. Ct.* 69, 100 *L. Ed.* 744 (1955)). The judgment entered by Judge Speakman on March 1, 1954 provided, in addition to injunctive relief, that Jackson and the defendant American Marking Corporation account to the plaintiff for "all avails or profits" received by them in the manufacture and sale of machines embodying the plaintiff's secrets. After the judgment was entered and an appeal had been taken, the defendant applied to the Appellant Division for permission to complete orders from 26 customers "in which about 80 per centum or more of the work had been accomplished." The Appellate Division granted permission on condition that all sums received in payment of such orders be placed in trust pending further order of the court. The many later proceedings relating to this item need not be detailed nor need we deal here with the judgment of April 8, 1957 which determined that the defendant American Marking Corporation and others had violated the judgment of March 1, 1954 and were guilty of contempt. We are concerned here only with the defendant's appeal and the plaintiff's cross-appeal from the judgment (dated March 8, 1957) directing the defendant American Marking Corporation (and Jackson) to account to the plain-

tiff in the sum of $31,727.31 plus interest from March 1, 1954, and costs.

On June 18, 1956 Judge Sullivan (to whom the matter had been assigned) directed the defendant American Marking Corporation (and Jackson) to prepare an account of all avails or profits made or received by them and directed the plaintiff to file such exceptions as it considered appropriate. An account was prepared and the plaintiff filed 11 exceptions. On September 7, 1956 a pretrial order was entered which provided that a hearing would be held by the court "limited to a determination of the correctness of the account filed only insofar as excepted by the plaintiff." The first exception filed by the plaintiff complained that the defendant American Marking Corporation (and Jackson) had not charged themselves with profits after March 1, 1954, and referred particularly to the machines which were the subject of the application to the Appellate Division for permission to complete. During the hearing the court indicated that it was not concerned with profits after March 1, 1954 except on the sales of the aforementioned machines and as to those a supplemental account was submitted and the plaintiff filed exceptions. Judge Sullivan took the position that the earlier proceedings had established that the machines completed pursuant to the permission of the Appellate Division actually embodied the plaintiff's trade secrets; as he put it "there wouldn't have been any permission required if they had not."

Judge Sullivan allowed some of the exceptions and disallowed others; the defendant's present appeal is confined (1) to the court's allowance of exception No. 8 insofar as it related to the 20% paid to National Machine Products Corporation on sales from American Screw Products Company (through National) to the defendant American Marking Corporation during the period from July 7, 1953 to March 1, 1954; (2) to the court's action in compelling an account for profits on sales of ink, type and solvents (exception No. 11); and (3) to the court's application of its rulings on the main account to the supplemental account.

The plaintiff's cross-appeal is confined to its contention that the court erred in permitting the defendant American Marking Corporation to offset its losses in 1951 against its profits during ensuing years; on this issue, the appellant's briefs are silent although its reply brief does urge that the plaintiff's cross-appeal is barred by its acceptance of the sum awarded to it in the judgment of March 1, 1954 and its delivery of a satisfaction of judgment.

From July 7, 1953 to March 1, 1954 the defendant American Marking Corporation purchased machines amounting to $60,933.53 from National Machine Products Corporation which had in turn purchased them from American Screw Products Company. Half of the sales price received by the defendant was remitted by it to National which retained 20% of the sum it received and remitted the balance to American Screw Products Company. The evidence indicates that National was simply a paper conduit which performed no significant functions, and the plaintiff persuasively urges that the sole reason for its creation was to siphon off part of the profits of the defendant American Marking Corporation. The dominating influence in the participating entities is John A. Cozzone. He and other members of his family are the partners in American Screw Products Company and his children are the stockholders, officers and directors of National Machine Products Corporation and the defendant American Marking Corporation. Judge Sullivan was satisfied that the dominating influence of John A. Cozzone, not only over American Screw Products Company and National Machine Products Corporation but also over defendant American Marking Corporation, existed throughout the period in question; he made the following finding which should not be disturbed on the record before us:

"The evidence also shows that out of total purchases some $60,933.53 represented purchases from or through National Machine Products Corp., another Cozzone family corporation.

Without going into too much detail, it might be apropos to point out that, except for a short period of time, which is not material here, the defendant corporation did not manufacture any of the machines it sold, but simply ordered them from a manufacturing

concern, as for example American Screw Products or Gus Reinke Machinery & Tool Company.

Neither was the National Machine Products Corporation a manufacturing concern and on the sixty thousand-odd dollars' worth of orders it obtained from the defendant corporation, the National Machine Products Corporation merely placed the orders with American Screw Products which made and shipped the machines.

When we consider that all three corporations were owned and controlled by the same family, no reasonable basis appears for placing this sixty thousand-odd dollars' worth of orders through National Machine Products instead of directly with American Screw Products, where the orders end up eventually anyway. The only tangible result was that the middle corporation added twenty per cent onto the cost of the machine to the defendant corporation, without rendering any adequate functions or service in return. The effect was to divert some of the profits which American Marking would otherwise make to National Machine Products. This is unjustified, according to the evidence, and the item of $60,933.53, representing purchases from National Machine Products, will only be allowed to the extent of eighty per cent thereof, or $48,746.83. * * *"

The appellant's brief asserts that exception No. 8 challenged "only the fairness of the prices charged to American Marking Corporation" and that there was no proof submitted by the plaintiff as to what were fair prices. But the plaintiff's contention does not rest on the unfairness of the charge to the defendant; it rests primarily on the ground that actual profits of the defendant were diverted to the paper conduit, National Machine Products Corporation, and should for purposes of the accounting be considered as profits of the defendant. The exception was phrased broadly and was adequate to encompass the plaintiff's contention; thus it charged that American Screw Products Company, National Machine Products Corporation and defendant American Marking Corporation constituted one economic unit "by reason of their relationship and their inter-company transactions and interests"; that defendant American Marking Corporation was required to pay to National Machine Products Corporation (and American Screw Products Company) such sums as were fixed by John A. Cozzone without regard to market value; and that the payments to National Machine Products Corporation (and American Screw Products Com-

pany) should not be allowed as deductions in calculating the net profits of the defendant American Marking Corporation. See *Restatement, Torts,* § 748, *comment* (b)(1938).

 The judgment of March 1, 1954 does not in terms refer to ink, type and solvents, but it does provide that the defendant American Marking Corporation account for "all avails or profits" received by it in the manufacture and sale of machines embodying the plaintiff's secrets. The machines will not operate without ink, type and solvents and the defendant sold these items in connection with the machines. We believe that the profits thereon may properly be considered as falling within the terms and scope of the judgment of March 1, 1954 and subscribe to the following finding by Judge Sullivan:

"The evidence discloses that in connection with the sale of the machines, which embodied some of plaintiff's trade secrets, the defendant, as ancillary to and part of the sale of the machines or subsequent to but in connection with the servicing of said machines also furnished the customer with type, ink, and solvents. Nowhere does it appear that the sale of these items were independent of and not connected with sales of the machines. While, strictly speaking, the sales of type, ink and solvents were not found by the court to be an infringement of the plaintiff's rights, they were so intimately connected with the defendant's illegal activities and ancillary thereto, that I feel that the defendant must also pay over to the plaintiff not only the profits on the sales of the illegally manufactured machines, but also the profit on type, ink and solvents sold."

*Cf. Duplate Corporation v. Triplex Safety Glass Co.,* 298 *U. S.* 448, 456, 56 *S. Ct.* 792, 80 *L. Ed.* 1274, 1281 (1936); *Union Electric Welding Co. v. Curry,* 279 *F.* 465, 468 (6 *Cir.* 1922), *certiorari* denied 260 *U. S.* 727, 43 *S. Ct.* 89, 67 *L. Ed.* 484 (1922); *Armstrong v. Belding Bros. & Co.,* 297 *F.* 728, 731 (2 *Cir.* 1924), *certiorari* denied 265 *U. S.* 585, 44 *S. Ct.* 459, 68 *L. Ed.* 1192 (1924); 4 *Callmann, Unfair Competition and Trade-Marks,* (2d ed. 1950) 1891; *Ellis, Trade Secrets* 395 (1953). The appellant seeks comfort from *res judicata* principles, but they do not support its position. Although the judgment of March 1, 1954 does not restrain the independent sale of ink, type and solvents,

it does not in any sense sanction their sale in connection with machines which embody the plaintiff's secrets.

The appellant objects to the trial court's application to the supplemental account of its rulings on the main account; it stresses that the pretrial order "limited the determination of the correctness of the accounting to the exceptions filed" and that the supplemental account was followed by the filing of only three exceptions which were overruled by the trial court. But the record fairly indicates that the original exceptions were intended to be applicable to the supplemental account and, considering the protracted nature of the litigation and the absence of prejudice to the defendant, the trial court was justified in applying all of its rulings to the supplemental account without further proceedings. We are satisfied that the three points urged by the defendant American Marking Corporation are without merit and that its appeal must be rejected *in toto*; we come now to the plaintiff's cross appeal from the trial court's ruling that the American Marking Corporation was entitled to offset its losses in 1951 against its profits during ensuing years. See *Duplate Corporation v. Triplex Safety Glass Co., supra,* 298 *U. S.* at *page* 457, 56 *S. Ct.* at *page* 796, 80 *L. Ed.* at *page* 1281; *Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co.,* 141 *U. S.* 441, 457, 12 *S. Ct.* 49, 35 *L. Ed.* 809, 816 (1891); *Restatement, supra,* § 747 *comment* (d); 4 *Callmann, supra,* at *p.* 1892; *Ellis, supra,* § 281 *et seq. Cf. Coca-Cola Co. v. Dixi-Cola Laboratories,* 57 *F. Supp.* 911, 912 (*D. C. D. Md.* 1944), affirmed in part and reversed in part on other grounds, 155 *F. 2d* 59 (4 *Cir.* 1946); *National Carbon Co. v. Richards & Co.,* 85 *F. 2d* 490 (2 *Cir.* 1936); *Electrical Engineers' Equipment Co. v. Champion Switch Co.,* 49 *F. 2d* 359 (*D. C. W. D. N. Y.* 1931); *Starr Piano Co. v. Auto Pneumatic Action Co.,* 12 *F. 2d* 586 (7 *Cir.* 1926); *Union Electric Welding Co. v. Curry, supra; McKee Glass Co. v. H. C. Fry Glass Co.,* 248 *F.* 125 (3 *Cir.,* 1918).

The account, as originally submitted by the defendant, showed a loss in the calendar year 1951, a profit in the

calendar year 1952, a loss in the calendar year 1953, and a loss during the two months preceding the entry of judgment on March 1, 1954. The account, after being adjusted in accordance with the trial court's disallowance of various items claimed by the defendant as deductions, still showed a loss in the calendar year 1951 but showed profits in 1952, 1953 and the two-month period in 1954. The trial court ruled that in recalculating the defendant's net profits, its losses during 1951 could be offset against its profits during the ensuing years. It is this ruling which the plaintiff's cross-appeal now seeks to reverse. Most of its supporting authorities deal with patent and trade-mark infringements but the pertinent principles which they express may be considered generally applicable to cases involving the wrongful appropriation of trade secrets. See *Ellis, supra,* § 281 *et seq. Cf. L. Martin Co. v. L. Martin & Wilckes Co.,* 75 *N. J. Eq.* 257, 260 (*E. & A.* 1909).

In the leading case of *Duplate Corporation v. Triplex Safety Glass Co., supra,* the Supreme Court expressed the view that the owner of a patent, in holding an infringer to an accounting for profits, could accept transactions resulting in a gain while rejecting transactions resulting in a loss. In *National Carbon Co. v. Richards & Co., supra,* the court adopted the same approach by refusing to permit losses during one calendar year to be offset against profits during other calendar years; in the course of his opinion Judge Swan said [85 *F.* 2d 492]:

"Complaint is made that a loss of some $12,000 in the year 1932 was excluded from the computation. This is correct. The loss in one year had no relation to profit or loss in another. Each hour of use of the carbon was a separate infringement. If the figures permitted it, the plaintiff could pick out only the profitable hours as the infringements for which he sued. See *Walker, Patents* (*6th ed*), § 754; *Klooster, Patent Accountings,* 257. Since the books are on the yearly basis, it is feasible and fair to make the years as independent infringements."

In *Starr Piano Co. v. Auto Pneumatic Action Co., supra* [12 *F.* 2d 589], the court, in declining to permit the offset

of losses during one calendar year against profits in other calendar years, took the position that there is nothing unfair in requiring a wrongdoer to account for profits while being himself required to "sustain the losses incurred in other and separate transactions." In *Coca-Cola Co. v. Dixi-Cola Laboratories, supra* [57 *F. Supp.* 912], Judge Coleman, in rejecting a special master's action in offsetting losses during one calendar year against profits in other calendar years, concluded that the weight of authority does not generally allow such offsets and that no sufficient reason had been given to justify the master's departure from the "usual method of computing the profits in cases of this kind." However, in *Union Electric Welding Co. v. Curry, supra,* it was noted that the applicability of the general rule against deducting losses from profits depends on the facts of the case and that there is "no invariable rule that each calendar year must stand by itself"; there, the court permitted offsets for losses sustained during an introductory year of the defendant's operations which entailed special expenses "in working up the business and bringing about the profits in the later period." [279 *F.* 467]

The general principles underlying most of the cited cases are expressed in the secondary authorities. Thus *Callmann, supra,* at *page* 1892, states that an infringing defendant may set off his losses against his profits "but only if they arise out of the same transaction"; that separate sales to several customers involve separate wrongs to the plaintiff and each stands on its own; that the profit realized on one sale cannot be reduced by the loss arising out of another; but that if the unprofitable sale is a necessary preliminary without which the profitable sale could not be effected the result of both must be included in the computation. And the *Restatement, supra,* § 747, *comment (d),* sets forth that a sale resulting in a loss may not generally be offset by an infringer against another and independent sale resulting in a gain, but it expressly recognizes that an offset may be allowed where the unprofitable sale was merely a necessary preliminary to the profitable sale. The burden

of establishing that he is entitled to the offset for losses is on the wrongdoer and it is equitable that doubts be resolved against him; this is acknowledged by both the primary and secondary authorities. See *Duplate Corporation v. Triplex Safety Glass Co., supra; Union Electric Welding Co. v. Curry, supra; Electrical Engineers' Equipment Co. v. Champion Switch Co., supra; Ellis, supra,* at *page* 417 *et seq.; Callmann, supra* at *page* 1882; 2 *Nims, Unfair Competition and Trade-Marks* (4*th ed.* 1947), 1368 *et seq.*

The defendant American Marking Corporation stands largely in the position of a defaulting trustee which has breached its fiduciary obligation by selling, on its own behalf, machines embodying the plaintiff's trade secrets. See *Adolph Gottscho, Inc., v. American Marking Corporation, supra,* 18 *N. J.* at *page* 474. As such it must account for its profits without regard to the extent of the plaintiff's actual damages; we need not consider whether the plaintiff might recover damages plus profits for that claim is not made here. *Compare L. Martin Co. v. L. Martin & Wilckes Co., supra, with Chappell & Co. v. Palermo Cafe,* 146 *F. Supp.* 867 (*D. C. D. Mass.* 1956). See *Consolidated Boiler Corporation v. Bogue Electric Co.,* 141 *N. J. Eq.* 550, 570 (*Ch.* 1948); *A. Hollander & Son, Inc., v. Philip A. Singer & Bro., Inc.,* 119 *N. J. Eq.* 52, 69 (*Ch.* 1935), affirmed 120 *N. J. Eq.* 76 (*E. & A.* 1936). Professor Scott, in his discussion of a defaulting trustee's right to balance losses against gains, points out that the trustee may do so only when his breaches of trust "are not separate and distinct" and that where there is doubt as to whether the breaches are separate and distinct it must be resolved against the trustee. 2 *Scott, Trusts* (2*d ed.* 1956), § 213.

In the instant matter the trial court flatly rejected the plaintiff's argument that the losses for 1951 should not be offset against the ensuing profits, expressing the view that "the argument is tenuous and not the rule to be applied." It suggested that if the plaintiff's contention were followed logically the court would "be obliged to discard time periods entirely and consider each individual sale separately and

whether or not the defendant made a profit or loss on it." But, as throughout our law, logic is neither the single nor controlling factor, and the plaintiff does not seek here to press its contention to its logical extreme. It points out that an innocent plaintiff seeking an accounting from a defendant wrongdoer is confronted with serious practical difficulties in establishing undisclosed as well as disclosed profits, particularly where manipulative devices such as family corporations are involved, and it effectively urges that where, as here, the defendant wrongdoer has submitted calendar year figures of profits and losses, it is just and equitable that the plaintiff be permitted to accept the profitable years while rejecting the others. See Cardozo, J., in *Duplate Corporation v. Triplex Safety Glass Co., supra.* The general rule established by the authorities favors the plaintiff, and the defendant has not attacked either its soundness or applicability, nor has it made any effort to bring itself within an exception. Thus its briefs contain not a single word about the merits of the issue raised by the plaintiff's cross-appeal, and the appendix which it has submitted contains nothing to indicate that the unprofitable sales in 1951 were not separate and distinct from the sales during the ensuing years, or that they were in fact necessary preliminaries to the later profitable sales. On the record before us, the trial court's ruling which permitted the offset of the 1951 losses must be reversed and the cause remanded for appropriate revision of the sum accountable by the defendant to the plaintiff.

 The final point requiring our attention is the contention that the plaintiff's cross-appeal "is moot" in view of the payment to the plaintiff and the warrant of satisfaction delivered by it to the defendant. The judgment directing the defendant to account to the plaintiff in the sum of $31,727.31 with interest and costs was entered on March 8, 1957; the defendant's notice of appeal was filed on April 9, 1957; and the plaintiff's notice of cross-appeal was filed on April 19, 1957. The defendant paid the amount due on the judgment and received a warrant of satisfaction dated

May 16, 1957. There was no compromise or settlement or any express waiver or abandonment of either the appeal or the cross-appeal but the defendant, though it never moved to dismiss the cross-appeal, now urges in its reply brief that it was barred. It places reliance on judicial statements that a litigant who accepts the benefits of a judgment is estopped from attacking its conditions. See *Krauss v. Krauss,* 74 *N. J. Eq.* 417, 421 (*E. & A.* 1908); *In re Mortgage Guaranty Corporations' Rehabilitation Act,* 137 *N. J. Eq.* 193, 198 (*E. & A.* 1945). But here the plaintiff's cross-appeal was explicitly confined to the single issue raised by the offset of the 1951 losses and its outcome could serve to increase but not to reduce the amount of the judgment. The plaintiff's acceptance of the sum found by the trial court to be due, and its delivery of the warrant of satisfaction while it at all times continued to assert that an additional sum was due, was in nowise inconsistent and furnished no real basis for an estoppel. The defendant makes no showing of having been prejudiced and no reason of substance has been advanced for considering the plaintiff's cross-appeal as voluntarily waived or technically barred. *Cf. Beronio v. Pension Commission of City of Hoboken,* 130 *N. J. L.* 620, 622 (*E. & A.* 1943); *McWilliams v. McWilliams,* 216 *Ala.* 16, 112 *So.* 318 (1927). Our conclusion that the cross-appeal was maintainable is buttressed by the many decisions elsewhere which recognize the right of a party to accept a sum to which he is in any event entitled and still pursue his request for a legal ruling on appeal which would increase that sum. See *Bass v. Ring,* 210 *Minn.* 598, 299 *N. W.* 679, 169 *A. L. R.* 980 (1947); *Shaffer v. Great American Indemnity Co.,* 147 *F. 2d* 981 (5 *Cir.* 1945); *Bohl v. Bohl,* 72 *S. D.* 257, 32 *N. W. 2d* 690 (1948); *Hayward v. Green,* 32 *Del. Ch.* 576, 88 *A. 2d* 806 (1952); 2 *Am. Jur., Appeal and Error* § 215 (1936); 4 *C. J. S. Appeal and Error* § 216c (1957).

The judgment of March 1, 1957 is modified and the cause is remanded to the Chancery Division for further proceedings in conformity with this opinion.

HEHER, J. (for modification). I would also modify the judgment to exclude an accounting by the defendant for profits on sales of ink, type and solvents, as not within the judgment of March 1, 1954. It is not shown that in the sale of these articles of commerce there was any invasion of plaintiff's rights. Otherwise, I concur in the judgment of this court.

HEHER, J., concurring in result.

*For modification*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*Opposed*—None.